[Civ. No. 5975. First Appellate District, Division Two.—November 5, 1927.]

FLORENCE WRIGHT, Respondent, v. L. O. FOREMAN et al., Appellants.

W. I. Gilbert for Appellants.

Black, Hammack & Black for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a verdict awarding respondent $1,500 damages for personal injuries sustained as a result of being struck by an automobile while walking across Eighth Street, in Los Angeles. Appellants claim that prejudicial error occurred in giving a certain instruction.

Respondent was employed as a saleswoman by the New York Cloak and Suit House at Seventh Street and Grand Avenue, in Los Angeles. At 5:15 o'clock P. M. August 9, 1922, she left her place of business, walking southerly along the easterly side of Grand Avenue until she reached the nearest curb at Eighth Street, which crossed Grand Avenue at right angles. Here she stopped, looking easterly, to her left, for approaching machines. Double car tracks extend along Eighth Street at this point. This street often contained heavy traffic with two or three machines sometimes traveling abreast. At this time, however, the nearest machines which were approaching on her side were half a block distant. She thereupon started directly across Eighth Street in the usual pathway reserved for pedestrians. Upon reaching the center of the street she stopped and looked to her right for approaching machines on the southerly side of the street. Just as she turned to look to her right, appellants' car, which was attempting to pass two other machines traveling westerly in the same direction, struck and knocked her down. She became senseless from the impact and was carried to the sidewalk. Upon reviving she was taken in appellants' car to the hospital for treatment. Respondent was a heavy woman, weighing 180 pounds, and was greatly injured by her fall. While the car did not pass over her, she received numerous bruises and contusions about the hips, limbs and body; her leg and back were injured. As a result she was confined to her bed for several weeks in great pain, and was prevented from attending to her employment for a period of three months. She then returned to her work, and after a brief service was again compelled to lose several weeks on account of her injuries.

There was a sharp conflict as to whether appellants' machine struck the respondent at all. Two witnesses testified that it did not strike her, but that she stumbled on the car

track and fell. However, respondent and one disinterested witness testified positively that the car did strike and knock her down.

It becomes important, in view of the giving of the challenged instruction, to consider whether the record furnishes evidence as to the exact position in the street which was occupied by the respondent at the time she was struck.

The respondent testified in part: "I was walking on the east side of Grand avenue; when I got to the intersection, I looked to the east, which was my left. I didn't see any machine so close but that I could go over in safety. But when I got to the center of the street I looked to my right. . . . When I got to the center of the street I was struck on the left side and knocked down. . . . When I was struck I was in the center between the two car tracks. . . . I don't remember any of the cars; . . . there were cars coming from the east. . . . When I regained consciousness, there was a car partly across the street, on the center between the tracks. There was an automobile that was acrc__ the tracks. . . . I don't say it was clear across on this side; it was half way across the street. I crossed right from the sidewalk, and it was half way across the street when it stopped. I know that the machine did not pass over me; I do not know how it got to that point. It was right in the center when I was struck. I was going south. . . . I know that the ordinary condition of that traffic is always two and sometimes three machines abreast. On this particular evening there were machines in sight, but not right close; they were a safe distance away; I couldn't say how far they were away; they were not quite half a block. . . . I stepped off the curbstone and walked right straight across. I saw these machines coming up there. I looked when I got to the center of the track; I looked to my right. I couldn't say how far these machines coming from the west were from me. I was watching them. I saw they were half a block away. . . . I saw two of them abreast, running side by side. . . . When I fell in the street, I was at the center between the car tracks. At the time I was struck, I was in motion. Just as I turned, I was struck. . . . Well, it (the machine) was across the crossing; . . . I was right opposite the sidewalk. . . . The machine was not sitting straight between the car tracks,

either; it was sitting cross-ways,—not exactly cross-ways, across the track,—the front of it was across the tracks. Q. Was any portion of the automobile across this southerly car track? A. It was, at the center; and when I came to, it was here (indicating).''

Myron Johnson testified: 'I was standing about twenty feet—when I saw these two cars coming abreast, and this third car whipped around endeavoring to pass the two cars, . . . and it hit her and knocked her down. . . . These two cars I speak of were traveling west on Eighth street. At the time I first saw Foreman's car strike Mrs. Wright, it was right here (indicating), the left wheel being in the center of the south car track. I mean the left front wheel was in the center of the south car track, passing over half of the intersection of the street. It stopped about five feet after they hit her. The car stayed here until they placed Mrs. Wright in the car to get her to a doctor. . . . The car hit her on the left side. She spun around and fell to the pavement. She did not stumble in any way. I did have a conversation with Mrs. Foreman, she said, 'This is a bad accident,' I said, 'Yes, if you had not tried to whip around on the south side of the track it would not have happened; you should not have been in such a hurry.' . . . I saw those two cars abreast. When she was struck, they were about eight or ten feet away from her. . . . The cars were traveling two abreast; the third car whipped around out to pass them.''

The jury was entitled to accept this evidence as true, although there was testimony in absolute conflict therewith.

This evidence therefore furnishes substantial proof to the effect that after due precaution on the part of respondent, she crossed to the center of the street where she looked to her right for approaching cars on the opposite side over which she was about to pass; and that while appellants were endeavoring to pass upon the left of two other machines which were traveling abreast in the same direction, the left front wheel of their automobile crossed the center line of the street upon the wrong side and was traveling about the center of the south car track, when respondent was struck and injured. In other words, there is substantial evidence that a portion of appellants' car

was on the wrong side of the street at the time of the accident. Appellants denied negligence on their part and relied upon alleged contributory negligence as a defense. Both of these issues were determined adversely to them by the jury. The evidence is ample to support these findings of the jury on both issues.

Among other instructions the court gave the following, which for the purpose of reference will be designated as a, b, and c, the last of which is challenged by the appellants as erroneous.

(a) "You are further instructed that if you should find from the evidence that the plaintiff immediately before she started to cross the street looked to her left to observe whether there were approaching vehicles and continued looking to her left until she reached the center of the street, and if you further find that she had reached a place on the street where, if the defendant operated his machine in accordance with the provisions of the law, she would have been out of the danger zone, then the failure of plaintiff to continue to look to the left would not preclude a recovery, because of her right to rely upon the use of the street by the defendant Naron in a lawful manner, and of her right to expect the automobile to be at a place where under the law it had a right to be."

(b) "You are instructed that the duty of a pedestrian to look both ways upon a street does not necessarily cease when he or she steps from the curb to the street, but such duty was incumbent upon her in this case at all times while she was in a position which might be one of peril from vehicles approaching from either side, and this duty continued upon her until she was completely across the street. Therefore, you are instructed that if the plaintiff in this case entered upon the public street in question and walked across said street from north to south thereof, it was her duty while thus walking, to protect herself by maintaining a lookout to her right and to her left, to ascertain whether or not vehicles were approaching from either direction.

"This was a continual duty on her part to protect herself from injury by approaching vehicles, and if she failed to exercise such care as above outlined, such failure on her part would be negligence, and if this negligence contributed

directly or proximately to the happening of the accident in any degree however slight, the plaintiff cannot recover, and your verdict will be for the defendants, notwithstanding the fact that you may believe the defendants themselves were guilty of negligence."

(c)  "This instruction is to be taken in connection with the one heretofore given, that the plaintiff, after she reached the center of the street, might assume, without contributory negligence on her part, that the defendant would not be approaching on the wrong side of the street; that is, that it was not contributory negligence on her part not to look to her left after she reached the center of the street. That instruction, I say, is to be taken in connection with this one."

Appellants contend that this final paragraph, designated "c," is erroneous, because (1) it is contradictory of the preceding instruction, and (2) that it invades the province of the jury by assuming that the respondent was struck by the automobile of the defendants while it was traveling on the wrong side of the street.

■  The first instruction above quoted is a correct statement of the law under the facts of this case. Substantially the same instruction was approved in the case of *Mosso* v. *Stanton Co.*, 89 Wash. 499 [148 Pac. 594]. ■  Under ordinary circumstances, it is not contributory negligence for one to fail to anticipate that the driver of an automobile over a congested city street will overlap the center and proceed upon the wrong side of the street. In the exercise of ordinary care, under such circumstances as this case presents, a pedestrian has the right to expect the driver of an automobile to conform to the customary traffic laws. (*Harris* v. *Johnson*, 174 Cal. 55 [Ann. Cas. 1918E, 560, L. R. A. 1917C, 477, 161 Pac. 1155] ; *Averdieck* v. *Barris,* 63 Cal. App. 495 [218 Pac. 786] ; *Gornstein* v. *Priver,* 64 Cal. App. 249, 259 [221 Pac. 396].)

■  The appellants do not complain of any of the instructions given except the explanatory paragraph above designated as "c." This does not purport to charge the jury as to the law, but the sole purpose of this explanation was to identify the former instruction "a" which, the court declared, must be read in connection with the instruction "b." In order to identify this instruction the court said:

"This instruction is to be taken in connection with the one heretofore given, that the plaintiff, *after she reached the center of the street,* might assume, etc." This is not a declaration that the plaintiff had in fact reached the center of the street. It may be reasonably construed to charge the jury that if they should find that she had reached the center of the street, then plaintiff might assume "that the defendant would not be approaching on the wrong side of the street." ■ A strained construction of the court's charge will not be indulged to upset a judgment. ■ It must be assumed that the jury understood and followed the instructions as a whole. They had been previously directed that "The court cannot determine the facts, nor aid you in arriving at them. . . . You are the sole judges of the effect and value of the evidence." They were also specifically instructed as to the application of the traffic laws, and the burden of proof. ■ This explanatory paragraph should not be construed as a part of the court's charge. Nor can it reasonably be said to infer that the respondent had in fact passed the center of the street at the time she was struck by appellants' automobile.

■ Even though paragraph "c" be considered a part of the court's instructions, it is not inconsistent with the preceding instruction. In paragraph "b" the court had charged the jury that in crossing a street it was "the duty of a pedestrian to look both ways. . . . This (duty) does not necessarily cease when she steps from the curb to the street, but *such duty was incumbent upon her* in this case at all times *while she was in a position which might be one of peril* from vehicles approaching from either side, and this duty continued upon her until she was completely across the street. . . . " This was a mere declaration of the principle that in crossing a street, a pedestrian must use due vigilance, even to the extent of looking both ways *while she is in a position of peril.* If this instruction is construed to mean that regardless of the state of traffic, or the circumstances and conditions under which a pedestrian attempts to cross a street, she will be guilty of contributory negligence unless she constantly looks both right and left to anticipate the approach of vehicles traveling on the wrong side of the street, then it is not the law.

■ Appellants may not complain of a conflict created

by an erroneous instruction which is favorable to them. Strictly construed, however, this instruction means that a pedestrian must be vigilant and watchful, continuing to look in the direction whence peril may reasonably be expected. This is precisely what is said in the case of *Moss* v. *Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631], upon which appellants rely. It was there said: "It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. This was a continuing duty, and was not met by looking once and then looking away again." Nor is there anything in conflict with this declaration in the opinion of the court in the case of *Mayer* v. *Anderson*, 36 Cal. App. 740 [173 Pac. 174], which is cited by appellants. It is there said: "When traffic upon the intersection above described was heavy (plaintiff), walked out upon the crossing looking straight ahead, without glancing to either side, and was absolutely oblivious to the proximity of the automobile right up to the moment of the impact, at which time he had traversed about three-quarters of the distance across the street. Plaintiff was bound to do more than ascertain whether or not there was any obstruction in his immediate path. He was required to be alert and watchful, and to look up and down the street in order to know whether approaching vehicles were likely to intercept his line of travel." It does not appear from the facts in the Meyer case, *supra,* that the plaintiff was struck by an automobile which was traveling in violation of the traffic laws on the wrong side of the street. Nor is it there asserted that a pedestrian must constantly look up and down a street regardless of conditions or location upon the thoroughfare, nor that he will be guilty of contributory negligence if he fails to anticipate the approach of machines on the wrong side of the street.

In the instant case, it appears that the respondent stopped before she attempted to cross Eighth Street looking for approaching machines; when she observed that the nearest ones were half a block distant, she crossed to the center looking to her left; upon reaching the center of the street she looked to her right for vehicles. This ap-

pears to have been a reasonable exercise of prudence on her part. Under full and fair instructions the jury so found.

The judgment is, therefore, affirmed.

Koford, P. J., and Sturtevant, J., concurred.