[Civ. No. 5101. Second Appellate District, Division Two.—April 26, 1928.]

W. P. BULLOCK, Appellant, v. WESTERN WHOLESALE DRUG CO. (a Corporation) et al., Respondents.

DORA BULLOCK, Appellant, v. WESTERN WHOLESALE DRUG CO. (a Corporation) et al., Respondents.

Arnold Praeger for Appellants.

Jennings & Belcher for Respondents.

VALENTINE, J., *pro tem.*—These two actions were brought by husband and wife for damages resulting from an automobile accident. The facts are further stated in the opinion. The two cases were consolidated for trial by stipulation.

At the conclusion of the taking of testimony the trial court, upon motion of defendants, directed the jury to find a verdict for defendants, and from the judgment entered upon such verdict in each case the plaintiffs take this appeal.

The appellants contend that the proximate cause of the accident was the negligence of the defendant Crittenden, who was driving the truck which belonged to the defendant Western Wholesale Drug Company.

The defendants pleaded contributory negligence and at the close of the trial made the motion for an instructed verdict on the following grounds:

"Mr. Jennings: If the court please, on behalf of the defendants we move for an instructed verdict and move that the court instruct the jury to return a verdict for the defendants in each of these cases, on the ground that the evidence shows as a matter of law that the plaintiffs were guilty of contributory negligence proximately causing the accident, and that that negligence was continuing, concurrent and contemporaneous with any negligence if any on the part of the defendant, and on the further ground that the doctrine of the last clear chance, which has been put forward as an excuse why the case should go to the jury, has no application in this case." Which the court granted.

The appellants assign as error on the part of the court: (1) In refusing to permit said cases to be submitted to the jury on the doctrine of the last clear chance; (2) In granting the motion of the defendants for an instructed verdict; (3) In instructing the jury to bring in a verdict for the defendants in each of said cases.

It appears from the evidence that on the sixth day of November, 1923, at about 1:30 o'clock P. M., the plaintiff W. P. Bullock was driving his Lexington automobile easterly on Second Street in the city of Los Angeles, and that the plaintiff Dora Bullock, his wife, was sitting beside him on his right side. That they approached the intersection of Second Street and Beaudry Avenue, proceeding easterly on the southerly side of Second Street at about 10 or 12 miles an hour, they both looked to the right up the hill on Beaudry Avenue, and did not look to the left until their machine was opposite the button or the center of the point of intersection of Second Street and Beaudry Avenue, when

for the first time they looked to the left and saw the truck approaching and at the same time the rear end of their machine was struck by the Ford truck driven by the defendant Crittenden, who was driving south on Beaudry Avenue. Crittenden and other witnesses testified that he was sounding his horn before he entered the intersection.

We will consider appellants' second and third points first, and as they are closely interrelated we may consider them together.

Respondents state that they do not claim that the evidence was not sufficient to warrant a finding that the defendant Crittenden was guilty of negligence, but do contend that the plaintiffs were guilty of contributory negligence as a matter of law. The plaintiff W. P. Bullock on cross-examination testified:

"Q. Now you never saw this truck, as I understand you, until you were about the middle of Beaudry? A. Yes sir.

"Q. As I understand you, you said that when you got to the intersection you looked up the hill to the south? A. Yes sir.

"Q. And saw that there was nothing coming down there? A. Yes sir.

"Q. Well, now, that hill to the south was to your right as you approached the intersection, wasn't it? A. Yes sir.

"Q. And you did not look to the left until you got out there into the center of Beaudry? A. That is right.

"Q. That is correct? A. Yes sir."

The plaintiff Dora Bullock on cross-examination testified as follows:

"Q. Did you look to the right when you got to Beaudry street, to see if any machine was coming down that hill there? A. I think I did. I looked to the right and then to the left.

"Q. And when was the first time that you looked to the left? A. After looking to the right.

"Q. You looked to the right first and saw there was no machine coming down the hill, did you? A. Yes sir.

"Q. And then looked to the left? A. Yes sir.

"Q. How far out into Beaudry street had you gotten at that time, when you looked to the left? A. About the center.

"Q. That is the first time you looked to the left? A. Yes sir."

The testimony of both Mr. and Mrs. Bullock is substantially the same on the conditions and happenings preceding and at the time of the accident. He testified that he was going 10 miles an hour, that his brakes were in good condition, that he could have stopped within 15 feet, that he did not see defendants' truck until he reached the center of Beaudry Avenue, when he looked to the left for the first time, that his car was about 16 feet long.

Respondents cite many authorities on the proposition that even if the defendant Crittenden was guilty of negligence in failing to observe the right of way rule in entering the intersection it does not excuse the plaintiffs for their contributory negligence.

There is conflicting testimony on various other points, but without further discussion we think the above, in connection with what is stated later in this opinion, shows the material facts which the trial court felt justified its conclusion that there was contributory negligence on the part of the plaintiffs as matter of law. Respondents, among other authorities, cite: *Gary South Coast Agency* v. *Pacific Elec. Ry. Co.*, 56 Cal. App. 469, 472 [205 Pac. 883], *Finkle* v. *Tait*, 55 Cal. App. 425 [203 Pac. 1031], and *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631], in which case the court says: "It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. This was a continuing duty and was not met by looking once and then looking away."

In the instant case both plaintiffs admitted that they did not look to the left at all, until they reached about the center of the intersection, which was the direction from which the danger was to be anticipated. Admitting for the sake of argument, but without deciding, that the trial court may have been justified in its conclusion that the plaintiffs were guilty of contributory negligence as matter of law, we will consider the remaining contention of appellants that however this may be and if Bullock is chargeable with contributory negligence, nevertheless it appears from the evi-

dence that the defendant Crittenden had the last clear chance to avoid the accident.

Appellants and respondents both agree that where the negligence of the plaintiff continues to the moment of the accident the doctrine of the last clear chance does not apply. (*Rowe* v. *Southern Cal. Ry. Co.*, 4 Cal. App. 1 [87 Pac. 220].) But the evidence is conflicting on this point, and as to how far from the intersection defendant Crittenden was when he first saw Bullock's car, and the interval which elapsed before the impact. Crittenden testified: "I was coming down Beaudry. I saw Mr. Bullock's car just in the neighborhood of the curb line, and I attempted to stop. My foot-brake would not work; it had not worked. I used my reverse and that slowed me down some, and used my emergency brake, and also threw it in low. I turned my car to the right as much as possible. If I had turned to the left I would have hit them amidships or in the front end of the car. I turned as much as I could to turn in behind them."

Mrs. Bullock testified as follows:

"Q. When you got to the crossing of Beaudry you did not see the truck until you were out in the center of the street, as I understand it? A. Yes sir.

"Q. Is that right? A. I said yes sir.

"Q. And it was then, according to your recollection, about 100 feet away? A. Yes.

Mr. Bullock testified as follows:

"Q. By Mr. Praeger: Where were you, Mr. Bullock, when you first noticed this truck? A. I was about the middle of Beaudry.

"Q. Well, now, what part of your car was about in the middle of Beaudry? A. Well, my seat was right about in the center, as near as I know.

"Q. And where was the truck driver? A. He was 100 feet back, about.

"Q. And how fast do you think he was going? A. About 30 miles an hour.

"Q. The Court: Locate that truck, 100 feet back there. What does that mean?

"Q. By Mr. Praeger: You say that the truck was about here (indicating). Where was he with respect to the center

line of Beaudry avenue? A. About the center of the street—of Beaudry.

"Q. That would be about here (indicating)? A. He was right in the center. That is not the center.

"Q. You say he was right in the center? A. Yes sir.

"The Court: You mean north of Second street? A. Yes sir.

"Q. By Mr. Praeger: In what direction was he proceeding? A. He was coming south.

"Q. Now, then, tell me where you were when you first saw this truck? A. Well, I was in between the curb and sitting right alongside of the button, just about the middle of the street, of Beaudry.

"Q. Will you put that car where you say you were when you first saw the truck, Mr. Bullock? (Witness indicates.)"

On cross-examination he testified: "Q. And you say, do you, and repeat now, that that truck was 100 feet away at the time you were in the position marked by the letter 'B' there on the blackboard? A. Yes sir."

The diagram or map referred to appears in the transcript as a part of Mr. Bullock's testimony. The witness Eickmeyer testified that the truck was about 132 feet from the corner at the time the plaintiff's car was about 15 feet from the intersection, although he apparently had previously testified differently in a deposition.

We believe that the evidence, quoted and referred to in part above, was sufficient to present a question of fact, which of course should have gone to the jury, and that the trial court erred in directing a verdict for defendants.

Judgment reversed.

Craig, Acting P. J., and Thompson, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 25, 1928.