[Civ. No. 9739. First Appellate District, Division One.—June 13, 1935.]

EDWIN DEIKE, Appellant, v. EAST BAY STREET RAILWAYS, LTD. (a Corporation), et al., Respondents.

Edward J. Jose for Appellant.

Chapman, Trefethen & Chapman and Frank S. Richards for Respondents.

BURROUGHS, J., *pro tem.*—This is an action for personal injuries alleged to have been suffered by the plaintiff as the result of the negligent operation of a street car owned by the defendant company and under the immediate control of its codefendant Hayden. At the close of the evidence the court directed the jury to return a verdict for both defendants, which direction having been complied with, judgment was entered for defendants, and the plaintiff has appealed therefrom. The court directed the verdict in favor of the defendants on the ground that plaintiff was as a matter of law guilty of contributory negligence which was the proximate cause of the accident. It is the contention of the appellant that the question of plaintiff's negligence was one of fact to be determined by the jury. ▮ The limits within which the trial court may exercise its power to direct a verdict have been definitely fixed and determined by decisions of comparatively recent rendition by both the Appellate and Supreme Courts of this state.

In *Estate of Caspar*, 172 Cal. 147, 149, 150 [155 Pac. 631], it is said: "The right of a court to direct a verdict is, touching the condition of the evidence, absolutely the same as the right of the court to grant a nonsuit. It may grant a nonsuit only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given."

In *Diamond* v. *Weyerhaeuser*, 178 Cal. 540, 542 [174 Pac. 38], the court said: "The existence or nonexistence of negligence is ordinarily a question of fact to be determined by a jury. On the other hand, the court may withdraw the case from the jury and direct a verdict where the evidence is undisputed, 'or is of such conclusive character, that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it'."

In *Estate of Lances,* 216 Cal. 397, at page 401 [14 Pac. (2d) 768], in speaking of the power of the court to direct a verdict, the Supreme Court said: "In other words, the function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict."

The *Estate of Finkler,* 3 Cal. (2d) 584 [46 Pac. (2d) 149], is the latest expression of our Supreme Court which we have been able to find as to the power of the trial court to direct a verdict. At page 591 it cites with approval the following from the *Estate of Sharon,* 179 Cal. 447, 459 [177 Pac. 283]: " 'It is not necessary that there should be an absence of conflict in the evidence. To deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one.' "

There are many other cases cited by counsel but they are, generally speaking, cumulative of the rule expressed in the above cases, which is, that to justify the trial court in granting a motion for a directed verdict there must be an entire lack of substantial evidence to sustain a verdict by a trial jury, or to warrant a court of appeals in sustaining such a verdict on appeal therefrom. The greatest difficulty encountered is to differentiate between what may in a given case constitute substantial evidence under the rule of law above cited.

The evidence in the case at bar develops the following undisputed facts: East Eighteenth Street in the city of Oakland runs in a generally easterly and westerly direction, and Third and Fourth Avenues in said city intersect said East Eighteenth Street at approximately right angles and run in a generally northerly and southerly direction. The defendant East Bay Street Railways, Ltd., operates a part of its streetcar system over a portion of said East Eighteenth Street. On the south side of the last-named street, between Third and Fourth Avenues, there is a private right of way where the double tracks of said East Bay Street Railways leave East Eighteenth Street and enter said private right of way, and at the time of the accident hereinafter referred to it was used

by the defendant company for the passage of its street cars in proceeding easterly from the heart of Oakland to the eastern portion of said city, and also in operating its street cars from the easterly portion of said city in a westerly direction to the business center of said city. Street cars proceeding westerly on East Eighteenth Street from a point slightly west of Fourth Avenue turn on a gradual turn to the left and across the sidewalk area on the south side of East Eighteenth Street and into the right of way above referred to; street cars going east, pass through said right of way and then turn to the right in a very gradual turn into East Eighteenth Street and thence along the tracks situate thereon. There is a cement sidewalk on the south side of East Eighteenth Street and the sidewalk space or area extending across the right of way is filled with bitumen or asphalt, substantially even with the cement sidewalk on each side thereof, and also extending out into East Eighteenth Street at the approximate level of said street. This asphalt or bitumen pavement at the line of the sidewalk is approximately one hundred and thirty-five feet in length along the line of said sidewalk. In other words, the two ends of the cement pavement or sidewalk immediately adjacent to said bitumen or asphalt to the east and west thereof respectively are approximately one hundred and thirty-five feet apart, and in the intervening space is the asphalt or bitumen pavement above referred to, and over and across which pedestrians walking along the southerly line of said East Eighteenth Street were accustomed to pass.

The plaintiff testified that at about 6:45 A. M. on the 23d of January, 1934, he was walking on the sidewalk on the south side of East Eighteenth Street, between Third and Fourth Avenues, in a westerly direction; that the street was wet and it was dark; that when he arrived at the point where he started to cross the right of way from the sidewalk, he looked back over his shoulder and saw no car approaching from the east, and that he proceeded a few steps and glanced in a westerly direction down the right of way and saw no car approaching from that direction. According to the diagram in evidence which is drawn to scale, and after plaintiff's attention was called to the scale, he placed a cross on the diagram, which point is approximately thirty-five feet from the first rail of the eastbound car track and approxi-

mately ninety feet from the most easterly rail of the west-bound car track, marking the place where he stopped to look. He further testified that he had crossed the easterly track and was about to cross the west track when he seemed to sense something behind him and he glanced back and there was a street car's headlight just back of his elbow; that he attempted to jump but was struck. He states further that he stepped over the first rail of the westerly track and was not quite in the middle of the sidewalk or passageway when he saw the headlight of the street car. He further stated that seeing the headlight was the first knowledge he had that a street car was coming from that direction; that he did not know what attracted his attention to the street car; that he just suddenly became aware of it; that he heard no warning gong of any kind; that upon seeing the headlight he just attempted to jump to his left but the car was within three or four feet of him when he first saw it and it was moving fairly fast; that he did not have time to jump. He further testified that during the full month of December and during all of the month of January, 1934, up to the twenty-third day thereof, being the day of the accident, he had been accustomed to take the same course each morning in going to his train; that his faculties of sight and hearing were good and that he had been living in the vicinity of the accident for approximately two months prior thereto; that he had been in the habit of walking down the south side of East Eighteenth Street towards the point of the accident; that he had observed before the date of the accident that street cars went in and out of said right of way; that he was conscious of the fact that street cars coming from the east down to the Key Route station passed along the rails indicated and above referred to, and that also street cars going east passed along the above referred to track; that he did not at any time from the time he left the point on the south sidewalk until the time when he saw the flash of light over his shoulder again look back; that when he looked over his shoulder, as first stated, he looked to see if there was a car in that block; that he was not able to judge of the speed of the street car; that it happened so quickly he did not have time to think about it; that it was almost instantly after he saw the street car that he was struck, simply a fraction of a second; that he thought he got out between the rails of the track upon which he was struck.

There was no testimony as to whether or not plaintiff was struck by the front end of the car. The plaintiff further testified that after the car stopped he was behind the street car trucks; that he did not claim that he went under the front trucks or that the wheels of the car went over him. He further testified that before the accident, and when he was east of Fourth Avenue, he saw the train he was to take stop just north of East Eighteenth Street on Third Avenue; that the street car which struck him was lighted; that there was a very dim headlight on the street car; that he had observed the habits of street cars in going in and coming out of the right of way and that they usually rang a bell or gong before entering or leaving the right of way; that they usually went slowly. He then testified that it was rather a dangerous crossing; that at the time he looked over his shoulder behind him he did not observe anything within his range of vision that made him believe it would be unsafe for him to proceed across the car tracks, and that he imagined his glance would cover back to the corner of Fourth Avenue, almost; that the purpose of his glancing back was to see if there was any moving street car in that block, and upon seeing none, he assumed it was safe to proceed. An examination of the map discloses that the length of the block from where plaintiff looked east, to the end of the block, is approximately a hundred feet. ■ There is other evidence in the record which in some instances contradicts the testimony of plaintiff, but as we are not permitted to weigh or consider conflicting evidence upon a motion of this character the foregoing evidence of plaintiff is accepted as true. It is therefore certain that the defendant company and its codefendant were guilty of negligence in the operation of the street car at the crossing without sounding a warning and that such negligence was a proximate cause of the accident. Indeed, this is not disputed.

■ Now, coming to a consideration of the conduct of plaintiff, it appears that at the time he started to cross the right of way of defendant railway company he looked over his shoulder in the direction from which the car that struck him would be expected and he could see to about the corner of Fourth Avenue, a distance of about one hundred feet, and he did not see any car. From this point he walked without again looking in the direction from which a car was to be expected, across the eastbound car track and to the south

rail of the westbound car track, a distance of about ninety feet, where he suddenly became aware, as heretofore stated, of the proximity of the car being operated by the defendant and within a few feet of him and was struck immediately.

In *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474, 476 [186 Pac. 631], it is said: "It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. This was a continuing duty and was not met by looking once and then looking away. In the exercise of ordinary care it is the duty of a pedestrian 'to look to the right and to the left whenever he has voluntarily put himself in a position which may be one of peril coming from either direction'."

In *Finkle* v. *Tait,* 55 Cal. App. 425 [203 Pac. 1031], a pedestrian and an automobile collided on a public street. The trial court directed a verdict for the defendant because of the contributory negligence of decedent, which negligence was a proximate cause of the accident. The Supreme Court in denying a hearing said of the conduct of the plaintiff: "He was crossing the street at the time and it was a part of his duty to use such reasonable ordinary care as the conditions demanded to see passing vehicles and avoid colliding with them. (*Niosi* v. *Empire Steam Laundry,* 117 Cal. (257) 260 [49 Pac. 185] ; *Scott* v. *San Bernardino etc. Co.*, 152 Cal. (604) 610 [93 Pac. 677].) A failure by him to exercise such ordinary care would be negligence on his part."

In *Bailey* v. *Market Street C. Ry. Co.*, 110 Cal. 320, 328 [42 Pac. 914], it is said: "The citizen, if upon the track, must leave it when the car approaches; if about to cross it he must use his senses of sight and hearing before stepping on the track, to ascertain whether a car is approaching, and, in the absence of some well-known custom or regulation at crossings which renders such a precaution on his part unnecessary, he is guilty of negligence if he fails to look before he passes upon the track, and if all the facts plainly and inevitably point to such negligence, leaving no room for argument or doubt, it is negligence in law."

In *Schooley* v. *Fresno Traction Co.*, 56 Cal. App. 705 [206 Pac. 481], which was an action for damages for personal injuries it was held that where a foot passenger walks or steps in front of an approaching street car and is struck the in-

stant he sets his foot between the rails, there is but one inference that can reasonably be drawn from that fact, and that is, the inference of contributory negligence.

In the light of these decisions, it appears in the case at bar without conflict or contradiction that when plaintiff left the place of safety on the sidewalk and started diagonally across the street-car tracks on East 18th Street, he looked over his shoulder to the east, a point from which cars were to be expected, and seeing no street car he traveled approximately ninety feet without again looking for approaching cars and did not see the car until it was practically in collision with him. Had he used ordinary car or caution he would have looked for approaching cars during his walk across the right of way and thus would have at least seen the light on the car and have avoided the accident. He said that it was a dangerous crossing; that it was dark and he could see only from the point where he started to cross the street to the corner of Fourth Avenue (a distance of about one hundred two feet). With a knowledge of all of these facts his conduct amounted to contributory negligence as a matter of law, which negligence proximately contributed to the accident. The judgment is therefore affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 12, 1935.