[Civ. No. 9980. First Appellate District, Division Two.—March 16, 1936.]

CHARLES L. GIBB, Respondent, v. EARL MINOR CLEAVE et al., Appellants.

Decoto & St. Sure for Appellants.

Frank M. Carr and W. W. Laidley for Respondent.

NOURSE, P. J.—In a trial before a jury the plaintiff had a verdict for injuries caused when struck by defendants' motor vehicle, and the defendants have raised three points in their appeal from the judgment—that plaintiff was guilty of contributory negligence, that he failed to prove any negligence on defendants' part, and that the damages were excessive. We limit our discussion to the first point.

The plaintiff attempted to cross the intersection of Broadway and Forty-first Streets in the city of Oakland at about 8:15 P. M. of December 13, 1934. The street was wet from recent rains, the night was dark and the visibility poor because of the glare of street lights upon the wet pavement.

Broadway at that point is an arterial boulevard appropriately marked with "stop signs" at the intersection with Forty-first. The plaintiff saw the car approaching from his left while he was on the sidewalk. When he reached the curb he took one look and saw the car 150 feet to his left. He wore a dark hat and a dark overcoat; he turned the collar of the coat completely over his face, and walked into the street with his eyes "on the buttons", and without looking in either direction for approaching cars. The buttons referred to marked a safety zone for northbound street car passengers. |Broadway from curb to curb is 70 feet wide. The distance from the outer rail of the street car tracks to the easterly curb is 26 feet, 7 inches. The safety zone is about four feet wide. The distance from the outer rail to the first button of the safety zone is about two feet and the distance from the outer button to the easterly curb is 20 feet, 1 inch. The plaintiff testified that as he left the easterly curb he saw the car running astride the easterly street car track. He could not judge its speed, but other evidence fixed a speed of 20 or 25 miles. Plaintiff was struck at a point near the most easterly button of the safety zone marking its northerly boundary. The car was stopped within two feet of the point of impact, and plaintiff was taken immediately to the emergency hospital for treatment. The attending physician and two nurses found him to be intoxicated and so testified.

██ The foregoing statement is without substantial conflict. The defendant, who was operating the car, and his companion both testified that they were not running on the street car track, and the plaintiff testified that he had drunk but a glass and a half of wine before the accident. Neither is important so far as the issue is concerned. If the car was on the street car rail, as plaintiff testified, and continued on that course, the two would have met at approximately the same point, and an accident would have been unavoidable unless one of the two came to a stop. The lights of the car would have then appeared in front of plaintiff and inside of the safety zone. But he was struck from the rear and outside of the safety zone. Hence, if his story be true, a single glance to the front or to the left would have shown that the car had left the rails and was trying to pass behind him. ██ His testimony as to the amount of wine he had taken is not evidence of nonintoxication and does not contradict the positive evidence of three disinterested witnesses who had a full

opportunity to examine his condition. These witnesses all testified that plaintiff was distinctly intoxicated when he was brought to the hospital, and there was no evidence that he had had any liquor to drink after the accident.

When the plaintiff was taken to the hospital he talked freely to the physician in charge, the nurses, the defendant who operated the car, and his companion. He absolved the operator from all blame and assumed full responsibility for the accident. All the evidence confirms this conclusion. The only rational analysis of the circumstances is that plaintiff became confused because of his intoxication and walked directly into a path of danger without taking any precautions for his own safety. He attempted to cross a busy arterial boulevard on a dark night at a point where no pedestrian crossing was laid out. He was struck at a point outside of the safety zone and outside of the territory where a pedestrian crossing would have been placed. His dark coat and hat made him an object of danger to himself and to others using the highway.

The whole issue is one which has been decided again and again—that a pedestrian does not exercise reasonable care by taking just one look before placing himself in the midst of oncoming traffic upon a public highway. In *Moss* v. *Boynton Co.*, 44 Cal. App. 474, 476 [186 Pac. 631], we said: "It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. This was a continuing duty and was not met by looking once and then looking away." The statement was based on the holding in *Sheldon* v. *James*, 175 Cal. 474, 479 [166 Pac. 8, 2 A. L. R. 1493], and has been followed without disagreement in the subsequent cases. (*Wright* v. *Foreman*, 86 Cal. App. 595, 604 [261 Pac. 481]; *Bullock* v. *Western Wholesale Drug Co.*, 91 Cal. App. 369, 372 [266 Pac. 978]; *Wing* v. *Kishi*, 92 Cal. App. 495, 499 [268 Pac. 483]; *Chase* v. *Thomas*, 7 Cal. App. (2d) 440, 444 [46 Pac. (2d) 200]; *Deike* v. *East Bay Street Railways, Ltd.*, 7 Cal. App. (2d) 544, 550 [46 Pac. (2d) 812]; *Finkle* v. *Tait*, 55 Cal. App. 425, 432 [203 Pac. 1031]; *Horton* v. *Stoll*, 3 Cal. App. (2d) 687, 690 [40 Pac. (2d) 603]; *Koeppel* v. *Daluiso*, 118 Cal. App. 442, 448 [5 Pac. (2d) 457].) The rule of these cases has often been misunderstood and misquoted. In the last case we have found on the subject, it is correctly

said that it "does not mean that it is a duty to look one way and continue to so look, but rather to look in the direction or directions of anticipated danger, *and to continue to be alert to safeguard against injury*". (*Lavin* v. *Fereria*, 10 Cal. App. (2d) 710 [52 Pac. (2d) 518].)

The rule is equally well settled that, where there is no conflict on the facts and reasonable men can draw but the one inference of contributory negligence, then the law steps in and denies plaintiff a recovery. (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 240 [116 Pac. 513]; *Gore* v. *Market Street Ry. Co.*, 4 Cal. (2d) 154 [48 Pac. (2d) 2]; *Anderson* v. *Market Street Ry. Co.*, 116 Cal. App. 282, 285 [2 Pac. (2d) 529].) This is such a case as the only inference that reasonable men could draw from the evidence is that plaintiff, while intoxicated, placed himself in a position of danger without taking any precautions for his own safety. Reasonable men could draw but one conclusion—that when plaintiff entered this arterial boulevard on a dark, wet night, and covered himself completely with dark clothing he created an extra hazard to himself and to all others using the highway. It is not a case of having looked to his left and then miscalculated the speed of defendants' car. He testified that he made no calculations. If he merely assumed that when he got into the traffic it would stop for him, then he was negligent in making himself practically invisible until it was too late to avoid injury.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 14, 1936. Curtis, J., and Langdon, J., voted for a hearing.