[Civ. No. 11686. Second Appellate District, Division Two.—April 7, 1938.]

GEORGE R. KING, Respondent, v. MILTON R. UNGER et al., Appellants.

Charles H. Goebel, Parker & Stanbury, Harry D. Parker, Raymond G. Stanbury and Vernon W. Hunt for Appellants.

Paul Blackwood for Respondent.

CRAIL, P. J.—This is an appeal by defendants from an order by the trial court granting plaintiff a new trial after the jury, at the instruction of the trial judge, returned a verdict in favor of the defendants in an action to recover damages for personal injuries.

Viewing the evidence most favorable to the plaintiff, as we must do in reviewing a judgment based upon a directed verdict (*Estate of Lances,* 216 Cal. 397, 400 [14 Pac. (2d) 768]), the facts are these: About 10 A. M. on February 27, 1937, plaintiff arrived at the northwest corner of Broadway and Ninth Streets, where they intersect in the city of Los Angeles. The traffic being opened on Broadway and closed on Ninth Street, plaintiff stopped at the curb and waited for the signal to change to "Go" for southbound traffic. When the signal released traffic on Broadway, he looked to his left (east) to see if there were any cars in the intersection and, seeing none, stepped off the curb and proceeded across Ninth Street. He did not again look to his left but, while in the crosswalk sixteen feet from the northerly curb of Ninth Street, he was struck by an automobile driven in a westerly direction on Ninth Street by defendant Unger, who had entered the intersection at a speed of twenty-five miles per hour after the traffic signal had closed east and west traffic on Ninth Street. Defendant's car was 150 feet away when plaintiff looked.

Defendant Unger was the president of defendant Mills Transfer Co., Inc., and the automobile which he was driving had been loaned to him by its owners, defendants Herbert E. Woodward, Inc., and Herbert E. Woodward.

■ The contention of the defendants is that the plaintiff was guilty of contributory negligence as a matter of law, arguing that it was not only the plaintiff's duty to look immediately before placing himself in a position of danger, but that this duty to look is a continuing duty and is not met by looking once and then looking away, and he relies upon: *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474, 476 [186 Pac. 631] ; *Mayer* v. *Anderson,* 36 Cal. App. 740, 742 [173 Pac. 174] ; *Flores* v. *Los Angeles Ry. Corp.*, 15 Cal. App. (2d) 576, 579 [59 Pac. (2d) 856].

The plaintiff looked to the left once. It is not the law that he owed a continuing duty to *look to the left*. The law is that he was under a continuing duty to exercise ordinary care. (*Salomon* v. *Meyer,* 1 Cal. (2d) 11 [32 Pac. (2d) 631] ; *Mc-Quigg* v. *Childs,* 213 Cal. 661 [3 Pac. (2d) 309] ; *Long* v. *Barbieri,* 120 Cal. App. 207, 215 [7 Pac. (2d) 1082] ; *Filson* v. *Balkins,* 206 Cal. 209, 212 [273 Pac. 578] ; *Walker* v. *Mason,* 109 Cal. App. 361 [293 Pac. 125].)

Plaintiff, having waited for the signal to change to "Stop" for all Ninth Street traffic, and for the signal to change to "Go" for Broadway traffic, and having then observed that the intersection was free of automobiles coming from the left, proceeded south in the pedestrian crosswalk crossing Ninth Street, and had a right to assume that the traffic on Ninth Street would obey the "Stop" signal. It cannot be said that he was guilty of contributory negligence as a matter of law in not looking again to the left after starting across the street. Whether he acted as a reasonably prudent person was a question of fact for the jury.

■ The sole allegation in the complaint was that the *defendants* drove, operated, maintained and controlled the automobile. The defendant contended at the trial and the court found that it was incumbent upon the plaintiff to prove that all of the defendants were driving the automobile in order to prove the cause of action against *all* of the defendants, whereas the evidence showed unequivocally that defendant Unger was the driver of the automobile and that none of the other defendants were present at the scene of the accident or had anything to do with the driving, operating, maintaining or controlling of the automobile at the time of the accident, and therefore the evidence failed to sustain

the allegations of the complaint so far as all defendants other than the defendant Unger were concerned.

However, the defendants acquiesced in the trial of all issues affecting their liability, the Woodwards as owners of the car giving permission for its use, and Mills Transfer Company, as principal of the defendant Unger. The defendants do not contend that there was not sufficient proof. The contention is that the pleadings were not sufficient. The courts have uniformly held that amendments to conform to the proof should be allowed with the greatest liberality and that in proper circumstances it is error to refuse such permission. The defendants argue that the trial court had a right to deny the plaintiff's motion to amend the complaint and to grant a nonsuit, but they do not discuss in this connection that it also had the right to grant a new trial because of such ruling. In our view the court properly exercised its discretion in granting a new trial for the purpose of permitting the application for amendment. (*Rabe* v. *Western Union Tel. Co.*, 198 Cal. 290, 299 [244 Pac. 1077].)

The defendants contend that the plaintiff did not make any motion to amend as to the Mills Transfer Company, but the court had already indicated that it would not grant any motions to amend the complaint at such a late date in the trial. We will not discuss whether such an amendment was necessary. If so, the trial court having definitely ruled that any suggestion of an amendment was too late, it did not abuse its discretion in granting a new trial as to the Mills Transfer Company.

Order affirmed.

Wood, J., concurred.

McCOMB, J., Dissenting.—I dissent.

In my opinion the decision of the present case is dependent upon the answer to this question: *Was plaintiff contributorily negligent as a matter of law in failing to look in an easterly direction from the time he left the curb until he was struck by the automobile operated by defendant Unger?*

In my view of the decisions of the Supreme and Appellate Courts of this state this question must be answered in the affirmative. The law is settled that there is a duty devolving

upon a pedestrian about to cross a congested street, as the act of an ordinarily prudent person, immediately before placing himself in a position of danger to look in the direction from which danger is to be anticipated, and that this duty is not met by looking once and then turning away, but he must continue to be alert to safeguard himself against injury. Likewise the law is settled that, if the pedestrian fails to meet this standard of care and as a proximate cause thereof injury results to him, he as a matter of law is contributorily negligent.

In *Gibb* v. *Cleave*, (1936) 12 Cal. App. (2d) 468, at page 471 [55 Pac. (2d) 938], Mr. Presiding Justice Nourse says:

"The whole issue is one which has been decided again and again—that a pedestrian does not exercise reasonable care by taking just one look before placing himself in the midst of oncoming traffic upon a public highway. In *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474, 476 [186 Pac. 631], we said: 'It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. *This was a continuing duty and was not met by looking once and then looking away.'* (Italics added.) The statement was based on the holding in *Sheldon* v. *James*, 175 Cal. 474, 479 [166 Pac. 8, 2 A. L. R. 1493], and has been followed without disagreement in the subsequent cases. (*Wright* v. *Foreman*, 86 Cal. App. 595, 604 [261 Pac. 481]; *Bullock* v. *Western Wholesale Drug Co.*, 91 Cal. App. 369, 372 [266 Pac. 978]; *Wing* v. *Kishi*, 92 Cal. App. 495, 499 [268 Pac. 483]; *Chase* v. *Thomas*, 7 Cal. App. (2d) 440, 444 [46 Pac. (2d) 200]; *Deike* v. *East Bay Street Railways, Ltd.*, 7 Cal. App. (2d) 544, 550 [46 Pac. (2d) 812]; *Finkle* v. *Tait*, 55 Cal. App. 425, 432 [203 Pac. 1031]; *Horton* v. *Stoll*, 3 Cal. App. (2d) 687, 690 [40 Pac. (2d) 603]; *Koeppel* v. *Daluiso*, 118 Cal. App. 442, 448 [5 Pac. (2d) 457].) The rule of these cases has often been misunderstood and misquoted. In the last case we have found on the subject it is correctly said that it 'does not mean that it is a duty to look one way and continue to so look, but rather to look in the direction or directions of anticipated danger, *and to continue to be alert to safeguard against injury'*. (*Lavin* v. *Fereira*, 10 Cal. App. (2d) 710 [52 Pac. (2d) 518].)"

Upon a singularly similar set of facts this court in the case of *Flores* v. *Los Angeles Ry. Corp.*, (1936) 15 Cal. App. (2d) 576 [59 Pac. (2d) 856], held the plaintiff contributorily negligent and affirmed a judgment predicated upon the granting of a motion for a directed verdict in favor of defendant. At page 579 Mr. Justice White says:

"A review of the evidence in this case, including the testimony of appellant Lupe Flores herself, convinces us that reasonable men could draw only one conclusion from that evidence, namely, an inference pointing unerringly to the fact that had plaintiff used ordinary care for her own safety and looked *at any time* after leaving the curb until she arrived at the street car track, the accident would have been prevented and she would not have been injured. (*Grandy* v. *Southern Pac. Co.*, 9 Cal. App. (2d) 441, 443 [49 Pac. (2d) 1127].) The testimony here shows beyond question that appellant Lupe Flores was negligent in stepping up to the tracks of respondent company directly in front of an oncoming street car which was plainly in view at the time she came up to the track, if she had chosen to glance in its direction. In *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474, 476 [186 Pac. 631], it was said: 'It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. *This was a continuing duty and was not met by looking once and then looking away.*' (Italics added.) This statement was based on the holding in *Sheldon* v. *James*, 175 Cal. 474, 479 [166 Pac. 8, 2 A. L. R. 1493], and has been followed without disagreement in subsequent cases. (Citing cases.) This of course does not mean that it is a duty to look one way and to continue so to look, but rather to look in the direction or directions of anticipated danger, *and to continue to be alert to safeguard against injury*. (Italics added.) (*Lavin* v. *Fereira*, 10 Cal. App. (2d) 710 [52 Pac. (2d) 518].)"

In *Morris* v. *Purity Sausage Co.*, (1934) 2 Cal. App. (2d) 536, at page 542 [38 Pac. (2d) 193], the court says:

"The court instructed that a pedestrian who attempts to cross a street at other than a regular crossing place must exercise greater precautions than at an established crossing, and 'that the observance of due care under such circumstances is not fulfilled by merely looking to the left and right as he

steps upon the street; *he must exercise that care during all the time that he was crossing'*. (Italics added.) Plaintiff objects to this instruction on the ground that it requires a pedestrian while crossing to look in all directions at all times. The instruction merely required due care in view of the increased hazard during all the time that the increased hazard continued, and correctly stated the rule in this regard. (Citing cases.) *Salomon* v. *Meyer,* 1 Cal. (2d) 11 [32 Pac. (2d) 631], is not a decision to the contrary.''

In *Deike* v. *East Bay Street Rys., Ltd.,* (1935) 7 Cal. App. (2d) 544, at page 550 [46 Pac. (2d) 812], the court says:

''In *Moss* v. *H. R. Boynton Co.,* 44 Cal. App. 474, 476 [186 Pac. 631], it is said: 'It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. *This was a continuing duty and was not met by looking once and then looking away.* (Italics added.) In the exercise of ordinary care it is the duty of a pedestrian to look to the right and to the left whenever he has voluntarily put himself in a position which may be one of peril coming from either direction.' . . .

''In the light of these decisions it appears in the case at bar without conflict or contradiction that when plaintiff left the place of safety on the sidewalk and started diagonally across the street-car tracks on East Eighteenth street he looked over his shoulder to the east, a point from which cars were to be expected, and seeing no street car he traveled approximately ninety feet without again looking for approaching cars and did not see the car until it was practically in collision with him. Had he used ordinary care or caution he would have looked for approaching cars during his walk across the right of way and thus would have at least seen the light on the car and have avoided the accident. He said that it was a dangerous crossing; that it was dark and he could see only from the point where he started to cross the street to the corner of Fourth avenue (a distance of about one hundred two feet). With a knowledge of all of these facts his conduct amounted to contributory negligence as a matter of law, which negligence proximately contributed to the accident.''

In *Bullock* v. *Western Wholesale Drug Co.*, (1928) 91 Cal. App. 369, at page 372 [266 Pac. 978], the court says:

"Respondents, among other authorities, cite *Gary South Coast Agency* v. *Pacific Elec. Ry. Co.*, 56 Cal. App. 469, 472 [205 Pac. 883], *Finkle* v. *Tait*, 55 Cal. App. 425 [203 Pac. 1031], and *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631], in which case the court says: 'It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. *This was a continuing duty and was not met by looking once and then looking away.*' " (Italics added.)

In *Wing* v. *Kishi*, (1928) 92 Cal. App. 495, at page 498 [268 Pac. 483], it is said:

"It was the duty of the deceased, as the act of an ordinary prudent person, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. *This was a continuing duty and would not have been met by looking once and then looking away.* (Italics added.) In the exercise of ordinary care it was the duty of deceased, as well as it is the duty of every pedestrian, 'to look to the right and to the left whenever he has voluntarily put himself in a position which might be one of peril, coming from either side'. (*Sheldon* v. *James*, 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8]; *Moss* v. *H. R. Boynton Co.*, *supra; Straten* v. *Spencer*, 52 Cal. App. 98 [197 Pac. 540]; *Davis* v. *Breuner Co.*, 167 Cal. 683 [140 Pac. 586]; *Lord* v. *Stacy*, 68 Cal. App. 517 [229 Pac. 874].)"

In *Ogden* v. *Lee*, (1923) 61 Cal. App. 493 [215 Pac. 122], in affirming a judgment predicated upon the granting of defendant's motion for a nonsuit upon the ground that plaintiff was contributorily negligent the court at page 496 says:

"In the case of *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631], the rule is stated as follows: 'It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be expected. *This was a continuing duty and was not met by looking once and then looking away.* (Italics added.) In the exercise of ordinary care it is the duty of a pedestrian to look to the right and to the left whenever he has voluntarily put himself in a position which may be one of peril coming from either

direction. (*Sheldon* v. *James,* 175 Cal. 474, 478 [2 A. L. R. 1493, 166 Pac. 8].)' Measuring the facts of this case by the rule thus stated, the plaintiff was guilty of contributory negligence. (*Finkle* v. *Tait,* 55 Cal. App. 425 [203 Pac. 1031]; *Chrissinger* v. *Southern Pac. Co.,* 169 Cal. 619 [149 Pac. 175].)''

In *Moss* v. *H. R. Boynton Co.,* (1919) 44 Cal. App. 474 [186 Pac. 631], in affirming a judgment based upon the granting of defendant's motion for a nonsuit upon the ground that plaintiff was contributorily negligent, at page 476 the court says:

''It was a duty devolving upon plaintiff, as the act of an ordinarily prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be anticipated. *This was a continuing duty and was not met by looking once and then looking away.* (Italics added.) In the exercise of ordinary care it is the duty of a pedestrian to look to the right and to the left whenever he has voluntarily put himself in a position which may be one of peril coming from either direction.''

In *Sheldon* v. *James,* (1917) 175 Cal. 474 [166 Pac. 8, 2 A. L. R. 1493], in holding that plaintiff was guilty of contributory negligence as a matter of law in not continuing to look to the right and left after having stepped into a street he was about to cross, at page 479 Mr. Justice Henshaw says:

''The observation of ordinary care by such a pedestrian is not fully performed by merely looking to the left or right as he steps upon the street. *The observance of that care is imperative upon him during all of the time that he is crossing.* (Italics added.) (*Scott* v. *San Bernardino etc. Co.,* 152 Cal. 604 [93 Pac. 677].)''

It is to be noted that our Supreme Court denied applications for hearing in *Gibb* v. *Cleave, supra, Flores* v. *Los Angeles Ry. Co., supra,* and *Ogden* v. *Lee, supra.* The only California decision which I have found which might indicate a contrary rule is *Salomon* v. *Meyer,* (1934) 1 Cal. (2d) 11 [32 Pac. (2d) 631], which case is distinguishable on its facts from the other cases above cited, in that the testimony showed that plaintiff saw the automobile being driven by defendant and misjudged the speed at which it was traveling. In any event, the decision in that case has apparently not been relied upon in any subsequent case, nor has it been extended beyond

facts which are identical therewith; and it is of course prior to the Supreme Court's denial of applications for hearing in *Gibb* v. *Cleave,* (1936) and *Flores* v. *Los Angeles Ry. Co.,* (1936) *supra.* If the majority opinion in this case is to prevail, the court is expressly overruling the decisions above cited and is establishing a new rule of law in this state.

I believe in the doctrine of *stare decisis,* that is, that the law is a science, the leading principles of which are settled and should not be open for discussion upon elevation to the bench of every new judge, however subtle his intellect, profound his learning, logical his reasoning, or acute his sense of justice. Upon the certainty of rules of law citizens enter into contracts, purchase property, and otherwise plan their course of action. Law is founded upon reason, but this means the reasoning which is the result of the general intelligence, learning, and experience of mankind over a protracted period of time and not of the individual reasoning of one or of several judges. (15 C. J. (1918) 916, sec. 304.)

I am also of the opinion that the rule of law which has obtained in this state for twenty years (*Sheldon* v. *James, supra*), requiring a pedestrian to make reasonable use of his eyes and ears to avoid being injured when crossing a public thoroughfare is a sound and beneficial principle of law. I therefore cannot join in the opinion of my learned associates, in view of the conceded facts of the instant case that plaintiff did not look to his right or left at any time after leaving the curb and proceeding in a southerly direction on Broadway across Ninth Street, since if he had looked *at any time* after stepping into the street he would have seen the automobile driven by defendant Unger and would have avoided being injured.

In my view of the law and the facts of this case the order from which an appeal has been taken should be reversed.

. A petition by appellants to have the cause heard to the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 2, 1938.