[Civ. No. 1652.   Fourth Appellate District.—April 6, 1937.]

J. B. VARNER et al., Respondents, .v. OSWALD SKOV, Appellant.

Joseph A. Spray, Loyal C. Kelley and W. H. Abrams for Appellant.

Walter C. Davison and Harvey W. Platt for Respondents.

BARNARD, P. J.—In this action for damages for the death of Mrs. Eva H. Varner a verdict was returned in favor of the plaintiffs, and the defendant has appealed from the judgment.

About 11 o'clock on the morning of February 25, 1934, Mrs. Varner was struck and killed by an automobile driven by the appellant. The accident occurred about a mile west of San Jacinto on Central Avenue, which runs east and west with a sixteen-foot pavement in the center and with graveled shoulders. Mrs. Varner was struck as she was crossing from her home on the north side of this highway to an automobile which was parked on the south side of the road, opposite

a private lane which led to her home. This car was driven by a Mrs. Record and was parked facing east, with its left wheels about a foot north from the southerly edge of the pavement. The nearest crossroad to the east of this private driveway was three-fourths of a mile away and the nearest one on the west was one-quarter of a mile away. The appellant was driving west on Central Avenue and his automobile struck Mrs. Varner at a point four feet north of the southerly edge of the pavement and slightly to the rear of the parked car. The day was clear, the highway was dry and there was no other traffic near the scene of the accident.

An occupant of the Record car testified that he saw Mrs. Varner leave her house and proceed along the private driveway toward Central Avenue at a fast walk; that she hesitated at a point about a foot north of the pavement and looked to the east; that she then proceeded to cross the pavement at a very fast walk or trot with her head down; that he could not see her during a portion of the time she was crossing the pavement because of the body of the car in which he was sitting; that he had observed the appellant's car when it was about a mile away; that it was then traveling about 40 or 45 miles an hour and its speed remained the same until the impact; that that car was about 140 feet from the point of collision when Mrs. Varner hesitated before crossing the pavement; that the appellant did not sound his horn; that a very short space of time elapsed between the time Mrs. Varner came to the edge of the pavement and the time the collision occurred; that the appellant's car crossed the center line of the highway about 90 feet from the point of collision and that it was on the south half of the highway at the time of the impact; that this car passed within 2½ feet of the Record car; and that Mrs. Varner was struck by the extreme left front bumper of the appellant's car. An officer testified that there was a dark tire mark about four feet from the southerly edge of the pavement, and opposite the west side of the private drive, which mark swerved toward the center of the highway. Mrs. Record testified that she parked her car opposite the Varner drive; that she saw Mrs. Varner leave the house and start walking down the driveway; that she slid over and opened the right door of the car; that when she got back behind the wheel she saw Mrs. Varner running across the road with her head ''kind of ducked down; not seriously, but then

just kind of ducked the way women run usually''; that she then saw the appellant's car about two or three car-lengths from her car; that that car was then about the center of the highway and coming at an angle toward her car; and that the appellant's car ''passed so closely that I think we could have touched hands if we had reached out''.

The appellant testified that the road was dry with hard shoulders on each side of the pavement; that he first saw Mrs. Varner when she was about twenty-five feet north of the pavement; that she was then approximately 160 feet away from him and walking fast toward the pavement; that she paused at a point near the pavement and looked in his direction; and that she then lowered her head and dashed across the road. He further testified that when he was 300 feet from the point of collision he was traveling at 40 to 45 miles an hour; that he was still going at this speed when he was 200 feet from the point of collision; that he was traveling at 35 miles per hour when he was 100 feet away; that he took his foot off the accelerator when he was 60 to 65 feet from the point of collision; that when she paused near the pavement he believed she was going to let him pass and then she dashed across the road; that ''she gave every indication that she was going to stop, and, therefore, after I had slowed up and seen this indication, I again began to step on the accelerator''; that ''I thought she was doing what every pedestrian would do under the circumstances, and that was to wait; but I had no more than received that inclination that she was there to wait than she began to proceed. Then it was she made the dodge across the road'': and that he did not apply his emergency brake, but applied his foot brake about 20 feet before the collision. He testified that she paused and looked directly at him, and gave him the impression that she was going to stop. When asked if he speeded up after receiving that impression he replied: ''Well, it was my intention to go ahead—whether I had begun to speed up, I don't know; but that is why the impact was as it was, because I was no more in the mood of stopping.''

The appellant contends that the trial court erred in refusing to hold, as a matter of law, that he was not guilty of any negligence. It is argued that the deceased was standing in a place of safety and there was nothing in her actions to cause the appellant to believe that she intended to do any-

thing else than remain there until he had passed; that when he was about 120 feet from her he reduced his speed a little and pulled his car to the left, straddling the center of the highway; that it was the natural and prudent thing to turn his car to the left and over the center line of the highway in order not to pass too close to the pedestrian; that the speed limit was 45 miles an hour and the appellant's speed was about 40 miles an hour; that he had a right to travel at this speed until a situation arose which would cause a reasonably prudent man to believe that a condition of peril existed; and that no such a situation arose until the deceased left her position of safety and suddenly darted across the highway in front of his car, too late for him to stop.

While the evidence would have supported a judgment in favor of the appellant it cannot be said therefrom, as a matter of law, that the appellant was free from negligence. He failed to sound his horn, he was traveling on the wrong side of the street, and he struck the deceased when she had crossed three-fourths of the pavement. An appraisal of the conduct of the two persons in question involves many facts and reasonable minds might well differ as to whether the appellant exercised that degree of care which was to be expected of a reasonably prudent man, under the circumstances then existing.

It is next urged that the court erred in refusing to hold that the deceased was, as a matter of law, guilty of contributory negligence which proximately contributed to her injury. It is argued that the deceased was negligent in leaving a position of safety and running directly into the path of appellant's approaching automobile and in failing to yield to the appellant the right of way in violation of section 131½ (c) of the California Vehicle Act, as then in force, and that it must be held that such negligence was a proximate cause of the accident. The section of the California Vehicle Act referred to did not give to the appellant an absolute right of way without regard to surrounding circumstances and the question whether the deceased violated that section depends upon a number of facts. While the appellant admits that it would be absurd and ridiculous to claim that he would have had the right of way if he had been a mile away at the time the deceased started to cross this highway he contends that it certainly appears that he had such a right of way under the circumstances here appear-

ing. Interesting questions are suggested as to the precise point at which the first of these statements would cease to be ridiculous and the point at which the second would become a certainty. In *White* v. *Davis,* 103 Cal. App. 531 [284 Pac. 1086], this court said:

"There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury."

This was a country highway, there were no marked or unmarked pedestrian lanes or crosswalks in the mile between the intersecting roads, and the deceased had a right, under proper circumstances, to cross this road. It appears, without conflict, that shortly before she reached the pavement she hesitated or stopped and looked in the direction of the approaching car. Whether a reasonably prudent person would have attempted to cross at that time depends upon a number of things, including how far away the appellant's car then was and the speed at which it was traveling. A pedestrian may have no certain knowledge of either of these things and must use his judgment. In the instant case the deceased took some precaution for her own safety and we think that, under the evidence, it is peculiarly a question of fact, and not one of law, whether or not the precaution taken was that which a reasonably prudent person would have taken under the circumstances.

The appellant complains of the giving of several instructions and of the refusal to give certain others. Several of the points thus raised are based upon the contention that under section 131½ (c) of the California Vehicle Act the deceased was under the positive duty of yielding the right of way to the appellant and that that section necessarily prevents a recovery in this action. This contention is with-

out merit and only a few of the points raised in connection with the instructions need be here considered.

■ The court refused to give an instruction on the doctrine of sudden emergency or peril which explained the doctrine and instructed the jurors that if they believed from the evidence that the appellant, through no fault of his own, suddenly found himself in a position of peril and that he then exercised that degree of care in endeavoring to avoid the accident which an ordinarily prudent person would have exercised, under the same circumstances, he should not be found guilty of negligence even though they might believe it would have been better for him to have pursued a different course in endeavoring to avoid the accident. There is no contention that this instruction, which is rather long, was not correct in itself and the only question presented is whether such an instruction should have been given under the circumstances shown by the evidence. It was appellant's theory that without fault upon his part he was suddenly confronted with a perilous situation when the deceased, after apparently stopping to allow him to pass, suddenly rushed across the highway, that being misled by her stopping and looking he proceeded, that through an abundance of caution he pulled over to the center of the highway to avoid passing too close to her, and that when she suddenly darted forward he did the best he could to meet the sudden emergency. While the evidence justifies an inference of negligence on the part of the appellant it would also justify an inference that he was not negligent up to the time the deceased, after stopping and looking, suddenly dashed across the road. There is evidence to support the appellant's contention that he was then faced with an emergency requiring quick action. It would appear to be entirely possible that the jury found him guilty of negligence on the theory that he did not adopt the best available course when the deceased started across the pavement. No other instruction on this subject was given and, in our opinion, the evidence justified and demanded an instruction appropriate to the theory thus relied upon by the appellant. The appellant was entitled to have this matter presented to the jury and in view of the close questions of fact presented it could hardly be held that a failure to instruct the jury in this regard was not prejudicial.

■ Complaint is made of the failure of the court to give instruction No. 4, as follows:

"If you find from the evidence in this case that Mrs. Varner was not exercising ordinary care for her own safety and preservation while crossing the highway in question, then I instruct you that she was not entitled to assume that automobile drivers would obey the law or would exercise due care in or about the operation of motor vehicles. Only one who is himself not negligent is entitled to assume that others will exercise ordinary care. And, if the pedestrian is not guilty of negligence such pedestrian is entitled to assume that others will obey the law. Therefore, if you find from the evidence in this case that Mrs. Varner was not exercising ordinary care and ordinary vigilance for her own safety and protection, then I instruct you that she was not entitled to assume that the defendant would obey the law or would use ordinary care."

The respondents argue that this instruction merely states in negative form what is affirmatively stated in instruction No. 3, which was given by the court, reading as follows:

"I instruct you that a person lawfully crossing a public street has the right to assume that all other persons using the street will also use ordinary care and caution. This rule allows pedestrians to assume, until the contrary reasonably appears, that the drivers of motor vehicles will obey and abide by the traffic laws and regulations, and will use due care and vigilance to avoid inflicting injury to them."

Instruction No. 3, which was given, does not clearly set forth that only pedestrians who are themselves not negligent are entitled to assume that others will obey the traffic laws and exercise ordinary care. If instruction No. 3 was given, instruction No. 4 should also have been given. While the error in this connection, standing alone, might not be sufficient to justify a reversal in view of all of the instructions given, it furnishes added weight to the contention that the absence of full and correct instructions may have influenced the verdict which was reached.

A similar situation exists in connection with instruction No. 13, which was given and which reads as follows:

"You are instructed that in the absence of evidence to the contrary, the law presumes that Eva H. Varner used due care on her part, and that she did everything that a reasonable, prudent person would have done under the same circumstances for the protection of her own safety. This pre-

sumption continues throughout the case until and unless it is overcome by satisfactory evidence.''

It has frequently been held that such an instruction should not be given where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to and at the time in question. That is the situation here. The evidence on behalf of the respondents rather completely sets forth the acts and conduct of the deceased, in so far as the same are material in this action. It has also been held in a number of cases in this state that under the circumstances thereof the giving of such an instruction, even if erroneous, was not sufficiently prejudicial to justify a reversal. While we think this instruction should not have been given here it is unnecessary to decide whether or not it was sufficiently prejudicial to justify a reversal in view of the error above referred to.

Because of the close questions of fact presented we think the errors in giving and refusing these instructions are sufficient to entitle the appellant to a new trial.

The judgment is reversed.

Marks, J., and Jennings, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1937.