[Civ. No. 12268.   Second Appellate District, Division One.—February 27, 1941.]

LEWIS W. FISCHER, Appellant, v. CHARLES EDWARD KEEN, Respondent.

Edgar T. Fee and Chas. X. Arnold for Appellant.

Parker & Stanbury, Harry D. Parker and Vernon W. Hunt for Respondent.

WHITE, J.—This action was instituted to recover damages on account of personal injuries sustained by plaintiff in an automobile accident. At the time of the accident, which occurred between 5:30 and 6 o'clock on the evening of January 14, 1938, plaintiff, a man 75 years of age, was on his way home from the business section of the city of Alhambra, carrying some purchases. When he arrived at the intersection of Chapel and Park Streets, it was nearing darkness and the lights on the automobile operated by defendant were turned on. Plaintiff was walking on the south side of Park Street and was crossing Chapel Street from the west to the east on what is known as an "unmarked crosswalk" at the intersection.

Trial was had before a jury, resulting in a verdict for defendant. A motion for a new trial having been denied, this appeal is prosecuted by plaintiff from the judgment entered upon the verdict in favor of defendant.

Plaintiff testified that as he approached Chapel Street he looked both ways and saw a car coming from the south; that he saw no automobile approaching from the north as he entered Chapel Street. The one automobile which he testified he saw was approaching from his right about 300 feet away. He started to cross the street. His eyesight was good. He then testified further: "After I started to cross I looked to the left again and I was pretty near to the intersection before I looked, and I looked and saw the car coming, and I thought I could get across before he came, but before I got across he struck me. I had one or two steps to cross. The fender or bumper hit me. I was between five and ten feet from the east curb line when I was hit. One or two steps and I would have been across."

The defendant testified that the illumination at the intersection was poor, consisting solely of a single light of an obsolete type suspended directly over the center of the intersection; that this light shines directly in the center of the intersection rather than upon the four corners thereof, and that there are low-hanging trees which cast shadows and darkness in the immediate vicinity of the accident; that plaintiff was dressed in dark clothing; that it was raining and the

pavement was wet. Defendant further testified that he was operating his car at a speed of about 25 miles per hour, with its headlights lighted and its windshield wiper working; that he was operating his car with its left side about 3 or 4 feet from the center line of Chapel Street and its right side about 8 or 10 feet from the east curb of said street; that as his car drew near Park Street he noted a series of cars coming south on Chapel Street with their headlights on and traveling 8 or 10 feet out from the west curb; that while those cars were approaching him he could not distinguish any object on his left; that he was about 250 feet south of Park Street when he first saw this group of cars; that they were rather close together, and that their lights ''perhaps blinded me slightly''. Defendant further testified that it had been a misty day, raining off and on, and ''I believe that it was raining at the time of the impact, but I am not certain. It had been raining on the way home, off and on, and there was a natural accumulation of moisture that accumulates on any windshield from a rain. This possibly obscured my vision of the intersection after I passed the last headlights.''

The defendant further testified that he was driving 25 miles per hour at the time of the accident; that he had not removed his foot from the accelerator or applied any brakes at any time prior to the accident; that after he had passed the last car that was approaching him from the opposite direction there was nothing to obscure his vision. That the first time he saw the plaintiff the latter was on the left-hand side of defendant's automobile and moving in the general direction of the front of the left side of the automobile. That when he passed the last automobile which approached from the north he was about 15 or 18 feet south on the south edge of the sidewalk on Park Street; that at the time he first saw the plaintiff the latter was about 4 feet directly in front of the automobile. The right front headlight on defendant's automobile was bent back about 1 inch, indicating that the same came in contact with plaintiff. The defendant further testified that when he first saw the plaintiff the latter ''seemed to be moving more rapidly than an ordinary walk; he seemed to be taking long steps and moving beyond an ordinary walk''.

The complaint filed by plaintiff contained the usual allegations of negligence and carelessness on the part of defendant, while the latter's answer, after denying most of the allegations contained in the complaint and in particular those

248

alleging carelessness or negligence, also set up affirmative defenses of contributory negligence and unavoidable accident.

Appellant first challenges the judgment on the ground that the record is barren of any substantial evidence to support the verdict and judgment in favor of respondent. In such a situation the powers and duties of an appellate tribunal were thus defined by this court in *Arundel* v. *Turk,* 16 Cal. App. (2d) 293, 295 [60 Pac. (2d) 486] : ''When a judgment is attacked as being unsupported by the evidence, the power of the appellate court in passing on this question begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the verdict rendered by the jury; and on appeal from a judgment for defendant in an action for damages for negligence, all conflicts in the evidence must be resolved in favor of the defendant, and all legitimate and reasonable inferences indulged in to uphold the judgment, if possible; and when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the jury. (*Crawford* v. *Southern Pac. Co.,* 3 Cal. (2d) 427 [45 Pac. (2d) 183]. . . . All intendments are in favor of the judgment arrived at upon conflicting testimony. Where the facts are such that contradictory inferences can reasonably be drawn from them, an appellate court will not substitute other inferences for those adopted by the trial jury. . . . (Citing cases.) . . . This is the rule even where the reviewing court might have reached a different conclusion. . . . '' (See, also, *Raggio* v. *Mallory,* 10 Cal. (2d) 723, 725 [76 Pac. (2d) 660].)

Therefore, even though we conclude that as a matter of law respondent driver was negligent, we may not disturb the judgment unless we can say that from clear and undisputed facts no inference of contributory negligence on the part of appellant can be drawn therefrom, because the question of contributory negligence, like that of negligence, is a question of fact for the jury. Appellant was walking within an unmarked crosswalk. It was therefore the duty of respondent to yield the right of way to the former. (Vehicle Code, sec. 560, subd. a.) In the performance of this duty respondent was not excused by the fact that the misty condition of his windshield prevented him from seeing to his left or that he was blinded by the headlights of approaching automobiles. When he found that he could not see to his left

and thereby ascertain whether anyone was within the crosswalk, it was his duty to slacken his admitted speed of 25 miles per hour and place his car under such control that he could stop within the time and distance intervening between his ability to see the crosswalk and his arrival thereat. It was respondent's duty to know whether pedestrians were using the crosswalk. The obligation rested upon him to yield the right of way to appellant, and this he did not do. He therefore violated the hereinbefore mentioned section of the Vehicle Code, and his act in so doing was negligence *per se.* (*Nicholas* v. *Leslie,* 7 Cal. App. (2d) 590, 594 [46 Pac. (2d) 761].)

■ Coming now to a consideration of appellant's conduct, it appears to us that the only possible theory upon which contributory negligence might be charged against him would be that after he first saw respondent's automobile 300 feet away and started across the street, he never again looked in the direction of the approaching car until he had traveled past the center of the street and had arrived at a position only 4 feet in front of the oncoming automobile, at which time he again saw it about the same instant it struck him. There devolved upon appellant, as the act of an ordinarily prudent man, the duty, before placing himself in a position of danger, to look in the direction from which danger was to be anticipated, and certainly an ordinarily prudent person would anticipate an existent danger from the approach of an automobile only 300 feet away at the time such person started to cross an intersection. Further, this was a continuing duty, and was not met by plaintiff's looking once and then looking away. That this is the law has been the holding without disagreement in many cases, including *Sheldon* v. *James,* 175 Cal. 474, 479 [166 Pac. 8, 2 A. L. R. 1493]; *Wright* v. *Foreman,* 86 Cal. App. 595, 603 [261 Pac. 481]; *Bullock* v. *Western Wholesale Drug Co.,* 91 Cal. App. 369 [266 Pac. 978]; *Wing* v. *Kishi,* 92 Cal. App. 495, 498 [268 Pac. 483]; *Chase* v. *Thomas,* 7 Cal. App. (2d) 440 [46 Pac. (2d) 200]; *Deike* v. *East Bay St. Rys., Ltd.,* 7 Cal. App. (2d) 544, 550 [46 Pac. (2d) 812]; *Finkle* v. *Tait,* 55 Cal. App. 425 [203 Pac. 1031]; *Horton* v. *Stoll,* 3 Cal. App. (2d) 687, 690 [40 Pac. (2d) 603]; *Koeppel* v. *Daluiso,* 118 Cal. App. 442, 448 [5 Pac. (2d) 457]. By the foregoing statement we do not mean to say that there is a duty to look one way and to continue so to look, but rather to look in the direction or direc-

tions of anticipated danger and to continue to be alert to safeguard against injury. (*Lavin* v. *Fereira,* 10 Cal. App. (2d) 710 [52 Pac. (2d) 518].)

In the instant case appellant testified that he saw no cars coming from his left, while respondent testified that several cars were approaching from the left, the headlights of which more or less blinded him. The jury may have disbelieved appellant's testimony that there were no cars approaching from his left, and may have accepted as true respondent's testimony to the contrary, and may have determined that appellant as he crossed the street continued to watch the machines approaching from his left and neglected to look in the direction from which respondent's automobile was approaching until appellant had passed the center of the street and had arrived practically at the point of impact with repondent's car. That such a deduction would be reasonable cannot be denied, and even though other inferences could reasonably be drawn from the facts, this court is without power to substitute its conclusions for those of the trial jury. (*Crawford* v. *Southern Pac. Co., supra.*) The jury in the case now before us impliedly found that appellant was guilty of contributory negligence and therefore could not recover in this action, and as there is substantial evidence in the record to sustain the verdict of the jury in that regard, the judgment based upon their verdict cannot be disturbed on the ground of insufficiency of the evidence to support it.

Appellant contends that the evidence is not sufficient to sustain this verdict because the evidence for respondent is inherently improbable and because the so-called physical facts, supported by mathematical calculations, clearly demonstrate that the accident occurred because of the negligence of respondent. We are not impressed with this argument because, as was said in *Nagamatsu* v. *Roher,* 10 Cal. App. (2d) 752, 755, 756 [53 Pac. (2d) 174], ''there is no possibility of mathematical exactness in such testimony as to the position and speed of another car. As is well known, such estimates of speed and distance are only approximations and in the nature of things could not be exact. . . . As has been frequently pointed out in cases of this nature such arguments are un reliable because they fail to take into account the human element. . . . 'Perhaps there is nothing more certain about an automobile accident than the fact that the visible results after-

ward are not an infallible guide in determining · what occurred.' ''   .

■   We come now to a consideration of appellant's contention that the court erred in the giving of certain instructions.   The instruction first challenged reads as follows:

''You are instructed that if a driver is operating an automobile with ordinary care, and if you further find from the evidence that suddenly a confusing emergency arises without fault on his part which would naturally overpower the normal judgment of the ordinary prudent driver, such driver is not required to exercise the same degree of care as that which would be required of him under normal circumstances; but under such circumstances the driver is required only to use that degree of care which would be used by a careful and prudent driver under the same circumstances.   Therefore, if you find that at, and prior to the happening of the accident in question, Mr. Keen was operating his automobile with ordinary care under all the circumstances, and that the plaintiff, Mr. Fischer, appeared in the roadway at such a time and in such a manner as to constitute a confusing emergency as I have just defined it to you, then Mr. Keen was not required to exercise the highest degree of care, but only that degree of care which would be used by a person of ordinary prudence under such circumstances, and would not be required to exercise the same calm judgment as would be required of him under normal circumstances, and would not be negligent in so acting if he used such care, even if you do find that he made some error of judgment or that some other course of conduct on his part might have avoided the accident.''

It was respondent's theory, both in his answer and by his testimony, that without fault upon his part he was suddenly confronted with a perilous situation when appellant suddenly appeared out of the darkness directly in the path of his machine and only four feet ahead of it.   In this state of the pleadings and the evidence, an instruction on the doctrine of sudden peril was a proper one.   (*Raymond* v. *Hill*, 168 Cal. 473 [143 Pac. 743]; *Kohlhauer* v. *Bronstein*, 21 Cal. App. (2d) 4, 6 [67 Pac. (2d) 1078]; *Graham* v. *Consolidated M. T. Co.*, 112 Cal. App. 648 [297 Pac. 617]; *Nitta* v. *Haslam*, 138 Cal. App. 736 [33 Pac. (2d) 678].)   Respondent was entitled to have this theory presented to the jury.   ■   Appellant earnestly contends that there was no evidence in the case supporting such instruction.   Even though we concede this to be true,

the instruction related solely to the acts of the driver of the car, and the claim of appellant that it was negligently operated. The challenged instruction was not in any way directed to the question of contributory negligence of appellant, and he was not, therefore, prejudiced by the giving of the same, even if it was unsupported by the evidence, a fact which we do not believe is borne out by the record.

We find no error in the giving of instruction No. 35. By it the jury was advised that even though a pedestrian has the right of way, he cannot proceed blindly and in reckless disregard of obvious danger, but must exercise ordinary care to avoid a collision if the same could be avoided by the exercise of such care. The two other instructions, numbered 20 and 21 respectively, of which appellant complains, were manifestly correct statements of the law and were applicable to the issue of contributory negligence on the part of the plaintiff as presented by the pleadings and raised by the evidence.

For the reasons herein stated, the judgment is affirmed.

York, P. J., and Doran, J., concurred.