[Civ. No. 14008. Second Dist., Div. Two. July 23, 1943.]

MARIE THERESA O'BRIEN, as Administratrix with Will Annexed, etc., Appellant, v. CLYDE SCHELLBERG et al., Respondents.

A. F. Mack, Jr., for Appellant.

Paul Nourse and Pat. A. McCormick for Respondents.

MOORE, P. J.—Two questions are presented by this appeal, viz.: (1) Does the uncontradicted testimony entitle plaintiff to a judgment as a matter of law? (2) Did the refusal of certain offered instructions constitute prejudicial error?

The action was brought by the administratrix with will annexed of the estate of decedent on behalf of the widow and three adult children against John Schellberg, owner of the Chevrolet, and Clyde Schellberg, his agent, who collided with plaintiff's decedent. Plaintiff alleged that the death of her husband was caused solely by the negligent operation of the car, causing his heirs general and special damages. There is no contradictory testimony. Whether the story told by the single witness, Clyde Schellberg, compels a judgment for plaintiff or whether from it inferences may fairly be drawn that overcome the presumption of Clyde's negligence must be resolved by a scrutiny of the facts, of the inferences flowing therefrom and by the application of legal presumptions.

On the evening of November 29, 1940, while Clyde was driving westerly on Riverside Drive in Los Angeles, he approached Pirtle Street at a speed of 25 miles per hour. His own headlights illuminated the roadway so that he could see about 100 feet in advance of his car. At the intersection of Pirtle Street Riverside Drive is 70 feet wide, with four lanes of travel on each side of the center stripe. The Chevrolet was in the fifth lane, that is, the first lane north of the center stripe. To Clyde's right and almost abreast of his automobile, two other cars in lanes six and seven were traveling in the same direction. A pedestrian crosswalk, seventeen feet wide, running across Riverside Drive was marked on the west side of Pirtle. As Clyde approached the intersection, two cars coming in lanes three and four next to the stripe added their illumination to that of the cars on the north side of the center line. He was looking straight ahead prior to the accident except for a momentary glance to his right as he entered Pirtle Street. He had no knowledge of the presence of decedent until within eight or ten feet of him when he discovered Mr. O'Brien directly in front of the left front fender of his Chevrolet and in the crosswalk. He was unable to tell whether decedent was walking, running, or standing. He did not determine in which direction he was facing. He saw him only in a fleeting glance before the impact. At the time of the collision, decedent was about three feet north of the center line. His body was thrown about 20 feet and came to rest about two feet south of the center stripe. An unnamed automobile preceded the Chevrolet by about sixty feet in the same lane just before the accident. It was clearly visible to Clyde as he proceeded along the highway.

Proof was made of the family relations of the deceased showing that he was separated from his wife from 1920 until 1937 during which time he supported her with the sum of $75 per month until 1929 and thereafter with $60 per month. Also, he supported her during the three years they lived together preceding his death. Decedent was 68 years of age with a life expectancy of 9.4 years. Mrs. O'Brien was 67 years old with a life expectancy of 10 years. At the time of his decease Mr. O'Brien had retired for three years on a life pension of $103.54 per month. Funeral expenses paid by Mrs. O'Brien totaled $558.78. By a vote of 9 to 3 the jury returned a verdict in favor of defendants.

Appellant contends that because decedent was, at

the instant of the impact, in a marked crosswalk, the driver of the Chevrolet was required by section 560 Vehicle Code, to yield the right of way; that therefore defendant driver was negligent *per se;* that decedent was entitled to presume that the driver of the Chevrolet would exercise due care under the circumstances (*Torrey* v. *Nelson,* 51 Cal.App.2d 191 [124 P.2d 336]); that the presumption that a person takes ordinary care of his own concerns was itself proof of Mr. O'Brien's caution. But freedom from negligence (*Speck* v. *Sarver,* 20 Cal.2d 585 [128 P.2d 16]) does not necessarily follow from the fact that deceased was in a marked crosswalk. It is the duty of every pedestrian before entering a highway to make reasonably careful observations to ascertain traffic conditions to be encountered. It is his duty to look in the direction from which an approaching motorist might endanger his safety, to exercise reasonable care at all times within the marked crosswalk, and to continue to be alert to safeguard against injury. (*Lavin* v. *Fereira,* 10 Cal.App.2d 710 [52 P.2d 518]; *Gibb* v. *Cleave,* 12 Cal.App.2d 468 [55 P.2d 938].) ■ It is the duty of a pedestrian to exercise reasonable care while crossing a street of heavy traffic and such duty continues throughout his passage. (*Sheldon* v. *James,* 175 Cal. 474, 479 [166 P. 8, 2 A.L.R. 1493].) ■ Whether he did so and whether the motorist who struck him exercised the proper amount of vigilance are questions for the jury's determination. Notwithstanding the presumption of the freedom from negligence on the part of decedent, the physical facts presented by the evidence may reasonably have justified the jury in drawing rational inferences to overcome such presumption. If such inferences were so justified the finding is final.

■ In view of the fact that an automobile preceded the Chevrolet by only 60 feet, it may fairly have been inferred that Mr. O'Brien stepped from the center stripe into the path of the approaching Chevrolet. In support of this inference the testimony of Clyde Schellberg is that he did not see the form of the decedent at any place on the right hand side of the Chevrolet in front of either of the cars to his right. The north half of the highway was illuminated by the headlights from the three cars proceeding westerly in lanes five, six, and seven. Had decedent been crossing the roadway from north to south the car ahead of the Chevrolet would in all probability have struck down the deceased before the arrival of the Schellberg car. Although there was no fog visibility was

poor. It was dark and all of the automobiles approaching the scene from either direction had their headlights aflame. The deceased was in a position from which he could, by the exercise of ordinary care, have observed the number of vehicles approaching the crosswalk from both directions and could have observed that the Chevrolet was approaching at a distance of 50 or 60 feet away and that its speed would endanger his safety should he step into its path. Under such circumstances it was negligence on the part of decedent to step into the lane of the oncoming Chevrolet. If he looked to the right he necessarily saw the headlights of the Chevrolet. If he saw them coming at a short distance, it was negligence for him to step in front of them. If, on the other hand, he did not look to his right, he was negligent in not looking. Whichever was his negligence it necessarily contributed to his injuries and his death.

We are not holding that deceased was negligent as a matter of law, but rather that it was a question of fact for the determination of the jury and of the trial court whether deceased was guilty of contributory negligence in entering the lane of the oncoming Chevrolet. A finding was to be derived from a consideration of all the circumstances, including the conduct of the parties just prior to the impact. After such determination by the trial court, the appellate court may not interfere if the record shows any substantial evidence in support of the verdict. (*Fischer* v. *Keen*, 43 Cal. App.2d 244, 248 [110 P.2d 693].) In a case where two sets of inferences can be reasonably drawn from the same facts we cannot substitute the conclusion derived from one group of inferences for that arising from the contrary inferences. (*Ibid.*) Otherwise, the constitutional right to have a jury decide the facts would be effectually abolished or the power of the trial judge to supervise the proceedings to determine the facts would as a result of such stealthy intervention pass into limbo.

The second contention made by appellant is likewise unavailing. She presented four instructions which she insists were erroneously rejected to her prejudice because they were necessary to a proper presentation of the law in view of the facts proved. The first was to the effect that conduct of a motorist contrary to section 560 Vehicle Code is negligence *per se*. The identical sentiment and words are contained in an instruction given. The second instruction rejected is to the effect that the failure of motorists on a public highway

to keep a vigilant lookout ahead to see the visible so as to avoid collisions is negligence as a matter of law. The benefit of such doctrine was embodied in the instruction that when a person looks toward a clearly visible object, he sees it and if he does not see it he is negligently inattentive.

The third refused instruction was to the effect that "every man obeys the law"; that John L. O'Brien is presumed to have been "taking care of his own concerns and obeying the law"; and that this presumption as evidence shall prevail unless overcome by satisfactory evidence. This thought was likewise included in a given instruction which declared that "each party was entitled to the presumption that every person takes ordinary care of his own concerns and obeys the law." Appellant makes a special attack upon this instruction because of the last quoted clause. This she says is contrary to the language of *Speck* v. *Sarver*, 20 Cal.2d 585 [128 P.2d 16], wherein it is said that the presumption that a person takes ordinary care of his own concerns "should not be given where the evidence introduced by plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time in question. . . ." However, unfortunately for appellant, the criticised instruction was given at her request. She is therefore not entitled to benefit by the court's error induced by her request. (*Hartman Ranch Co.* v. *Associated Oil Co.*, 10 Cal.2d 232 [73 P.2d 1163]; *Buckley* v. *Shell Chemical Co.*, 32 Cal.App.2d 209 [89 P.2d 453].)

Finally, appellant complains that her proposed instruction that a greater amount of ordinary care was required of defendant driver because of the dangerous instrumentality under his control with which he could inflict serious injuries should not have been rejected. The same principle was contained in an instruction read to the jury declaring that "the driver of a motor vehicle, when ordinarily careful, will be alertly conscious of the fact that he is in charge of a machine capable of projecting into serious consequences any negligence of his own." The instruction quoted from covered fully the point advanced by the rejected instruction and to no more was he entitled (*Hicks* v. *Ocean Shore Railway, Inc.*, 18 Cal.2d 773 [117 P.2d 850]).

The final assignment is the order sustaining an objection by defendant to the following question addressed to Clyde Schellberg: "Before the day of the accident had you ever seen any pedestrians crossing Riverside Drive at that

particular intersection?'' The ''cue'' for such question says appellant is the rule that prior knowledge of a condition has a direct bearing on the degree of care with which a person may be charged. She analogizes the circumstances confronting the witness to those in which a motorist is required to have observed children of tender years at play in the vicinity of the scene where such motorist has caused injuries to an infant. (Citing *Parra* v. *Cleaver,* 110 Cal.App. 168 [294 P. 6]; *Moore* v. *Bishop,* 113 Cal.App. 25 [297 P. 580].) The question was irrelevant. The authorities cited relate to those situations in which children were known by the tort feasor to be actually present at the time of the accident or in which children in great numbers thronged the avenue where the careless motorist drove. Schellberg owed the duty to yield the right of way to Mr. O'Brien, whether he had seen none or a thousand cross Riverside Drive in the crosswalk at Pirtle.

The judgment is affirmed.

McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 20, 1943.