[Civ. No. 3715. Fourth Dist. Apr. 20, 1948.]

HELENE M. SALSBERRY, Appellant, v. WILLIAM JOHN SMITH, Respondent.

Schmidt & Catalano for Appellant.

Mack & Bianco for Respondent.

GRIFFIN, J.—This is an appeal by plaintiff from a judgment on a jury verdict in favor of defendant in a personal injury action. The complaint charges that on July 26, 1946, defendant negligently drove an automobile into collision with plaintiff, a pedestrian, at the intersection of Highway 6 and Inyo Street, in Mojave, Kern County. Defendant denied generally the allegations and pleaded contributory negligence of plaintiff.

Highway 6 runs north and south and is 60 feet in width with a double center line and two traffic lanes on each side thereof. The curb is abutted by a sidewalk 10 feet wide. It is intersected at right angles by Inyo Street, which runs east and west and is 58 feet wide, forming a "T" intersection. The center of Inyo Street is unmarked and is likewise abutted by a sidewalk 10 feet wide. A pedestrian crosswalk 10 feet wide and marked on the pavement with white lines extends between the northeast corner and the southeast corner of the intersection. Plaintiff was in that crosswalk at the time she was struck. A hotel stood on the northeast corner of the intersection and parked cars were in front of it causing, to some extent, an obstruction to the view, under section 511, subdivision 4 of the Vehicle Code.

About noon on the day of the accident plaintiff, aged 66, a typist and notary, had been to the post office south of Inyo Street, and was returning to her office which was on the north side of that street about one-half block east of Highway 6.

Defendant testified that he was driving his car south on Highway 6 just west of the center line, about 25 miles per hour, with the intention of making a left turn; that after he reached the east-west crosswalk he rounded the center of the intersection and did not cut the corner; that while making the turn and traveling about 18 miles per hour he saw plaintiff standing on the sidewalk at the southeast corner; that

he looked down at his speedometer and when he looked up again plaintiff was about 3 feet in front of him in the southerly half of the north-south crosswalk; that he applied his brakes and stopped within a few feet but the front portion of his car struck plaintiff and she fell to the pavement at a point indicated about 3 feet east of the east crosswalk marking and a short distance south of the center line of Inyo Street; that his front wheels stopped on that crosswalk marking. He then testified that the brake marks showed that the wheels on the left side of his car were then about 4 feet south of the center line of Inyo Street. Defendant was not asked as to whether or not he gave any signal indicating a left-hand turn.

The negligence of defendant in not looking and not properly watching the roadway while negotiating the turn was conceded at the trial and is conceded on this appeal. It is not conceded, however, that there was any evidence of his failure to signal a left turn, *at the time the law required him to do so.* (See Veh. Code, § 544.)

Another witness corroborated defendant's testimony as to the position of the tire marks in the south half of the crosswalk.

Plaintiff testified generally that at the south curb of Inyo Street she looked up the street in all three directions; that as she got off the curb she saw some cars proceeding from the north on Highway 6; that she saw "that car up the street in the middle heavy lane"; that she watched that car and looked at the traffic in general; that "there were no arm signals so I took it the car was going on directly south and I proceeded on"; that "when I got, it seems to me, a little through the center lane . . . I may be wrong about that . . . all of a sudden I was conscious of something swinging, I heard a screech of brakes and horn, and I looked up and that big dark car loomed up, came right at me, and I tried to go forward and it got me." On cross-examination she testified that ordinarily she wore glasses with a correction in them; that on this day the sun was so bright she wore sun-glasses without the correction; that without such correction her vision was not "blurry." However, in her deposition she testified that before she got her new glasses (after the accident) my sight was "hazy, it was blurred" when she tried to read matter that was close to her. Therein she also testified, in reply to the question: "Can you tell me about how far you had

gone from the sidewalk along the pedestrian lane when you first saw this automobile?" "A. It was somewhere, I would imagine, just in the middle, I tried to watch the crossing, I don't know whether I got half way across, I don't think so, I am not sure." She estimated that she had gone about 25 feet from the south curb at the time she was struck. (Inyo Street was 58 feet wide.) She then testified generally to her claimed injuries; that her right hand was not as efficient as before and affected her typing ability; that she had been dizzy at all times since the accident; that she had excessive pain in her right leg and had other similar ailments.

Several doctors examined her and testified or made reports substantiating, to some extent, her statement as to her condition. A doctor who examined her testified for defendant and said that he found "the examination entirely negative as far as anything relating to the injury which the patient stated she had on July 26, 1946"; that he concluded that her complaint as to her right lower extremity was attributable to deep varicosities (varicose veins); that he made tests of her complaint about partial loss of sensation in her right side (claimed hypesthesia); that his tests showed she did not have a "true hypesthesia"; that he tested the grip of her right hand on the dynamometer; that in his opinion there was no actual physical disorder present.

There was testimony that plaintiff had hypesthesia on the occasion of her first examination, on a second she did not, and on a third there was evidence of it again. The doctor described this reaction as possible "litigation neurosis," i. e., "a type of neurosis that we usually clear up immediately upon receiving a satisfactory financial settlement."

One MacElroy testified that he was standing at the northeast corner of the intersection and saw plaintiff start across Inyo Street in the pedestrian crosswalk; that when she was near the center of the street defendant's automobile made a left turn, "cut the corner" and it struck plaintiff on her left side; that the left front wheel of defendant's car was about at the center line of Inyo Street. When asked if plaintiff ever turned her head and looked at the approaching car he answered "Not to my knowledge." "Q. As far as you could tell, her attention was riveted on something ahead here? A. Walking to the other curb. Q. Walking to the other curb and never looked from the time you first saw her until she was struck? A. No." "Q. Did she look 'anyplace except the

cross-walk?' A. Well, I wouldn't know that, I saw her when she left the curb on the south side, and I didn't keep my eyes on her, but when I saw the car coming around the corner then I looked at her. Q. Where was she looking then? A. Well she was looking straight ahead or I didn't notice for sure. Q. She was looking toward you, as far as you recall? A. Well, she was looking the other side of the curb.''

Upon this evidence the jury found for defendant. Plaintiff appealed and relies upon her contention that the evidence is insufficient as a matter of law to support the judgment for defendant, relying principally upon *Schomer* v. *R. L. Craig Co.,* 137 Cal.App. 620 [31 P.2d 396] ; *Cleveland* v. *Petrusich,* 117 Cal.App. 71 [3 P.2d 384] ; *Minor* v. *Foote,* 100 Cal.App. 441 [280 P. 197] ; and *LeBlanc* v. *Browne,* 78 Cal. App.2d 63 [177 P.2d 347], in which latter case a pedestrian was in a marked crosswalk and *past the center of the intersection* when struck by a car coming from her left which had cut the corner. Upon the principle that the law does not require a pedestrian to look in every direction during every instant of her progress, but requires that she must look at least in those directions from which danger may be reasonably apprehended, and since she had passed the center of the intersection, she would be under no obligation to anticipate the approach of an automobile coming from her left. The facts here related do not bring plaintiff within that rule. While there is a conflict, the most convincing evidence shows that plaintiff was struck while she was in the south half of the pedestrian crosswalk and the jury had the right to so believe and that defendant made a proper turn at the intersection and did not ''cut the corner.'' Whether, under the circumstances, plaintiff looked in the direction from which danger would be reasonably apprehended, and as often and as carefully as would a person of ordinary prudence under like circumstances, were factual questions for the jury. An implied finding of the jury on that question will not be disturbed on appeal where there is, as here, substantial evidence or reasonable inferences to support it. (*LeBlanc* v. *Browne, supra; Arundel* v. *Turk,* 16 Cal.App.2d 293, 295 [60 P.2d 486] ; *Fischer* v. *Keen,* 43 Cal.App.2d 244, 248 [110 P.2d 693] ; *Raggio* v. *Mallory,* 10 Cal.2d 723, 725 [76 P.2d 660] ; *McQuigg* v. *Childs,* 213 Cal. 661 [3 P.2d 309] ; *O'Brien* v. *Schellberg,* 59 Cal.App.2d 764 [140 P.2d 159] ; *Rapp* v. *Southern Service Co.,* 116 Cal.App. 699, 703 [4 P.2d 195].)

The other cases relied upon by plaintiff were actions where the jury found that plaintiffs (pedestrians) were not guilty of contributory negligence and defendants argued that they were guilty of contributory negligence as a matter of law. Such is not the case before us.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.