[Civ. No. 7529.   Third Dist.   Nov. 10, 1948.]

MERVIN EDWIN STICKEL et al. Appellants, v. HAROLD DURFEE, Respondent.

Thomas O'Hara and Robert A. Zarick for Appellants.

Russell A. Harris for Respondent.

THOMPSON, J. — The plaintiffs have appealed from a judgment which was rendered against them, pursuant to the verdict of a jury. This is a suit for damages resulting from an automobile collision. A motion for new trial was denied. The only issue on appeal is whether the trial court committed error in refusing the only instruction proffered on the subject of the discretion required to be exercised by one who is

suddenly confronted with imminent peril. It is conceded the refused instruction properly stated the rule of law, if it is applicable to the facts adduced by the evidence. The appellant contends that the court, in refusing the instruction, invaded the province of the jury in determining the question of fact as to whether the driver of plaintiffs' car was confronted with imminent peril through no fault of his own.

The plaintiff Mervin Edwin Stickel was driving his Dodge pickup automobile northerly from Sacramento toward Auburn on Sunday, December 16, 1945, at about 11 o'clock a. m. His wife and 5-year-old son were riding with him. It was a clear day. They were traveling along Highway Number 40, which, at the point of the accident, was a straight three-lane paved highway about 30 feet in width. They overtook two machines running close together in the proper right-hand lane at the speed of only about 30 miles per hour. After slowing down and following them for a brief time, Mr. Stickel increased his speed to about 45 miles per hour and attempted to pass those cars by turning into the middle lane. There was then no other traffic in sight in that vicinity. The view of the highway was open and clear of traffic for a distance in excess of half a mile, to where a slight elevation or hill obscured a view of the highway beyond that point. After Mr. Stickel entered the middle lane, another machine arrived from the south and lined up behind the two cars in the right-hand lane. When Stickel reached a point about opposite the middle car on his right hand, he suddenly observed a Ford coupé, driven by the defendant, approaching in the center lane over the crest of the hill at a very rapid rate of speed. A traffic officer, who was riding a motorcycle and who observed the defendant's excessive speed about a mile north of that hill, testified that he ''clocked'' his speed and that defendant approached the hill at the rate of 70 miles per hour, and that he had just passed two other cars and was traveling in the center lane. The defendant admitted he was traveling 60 or 65 miles per hour. Mrs. Lee, wife of the driver of the second car, behind which plaintiff was driving before he turned into the middle lane, testified that the defendant appeared over the crest of the hill driving very rapidly in the center lane, and that he continued to approach in that lane until he was very close to plaintiff's machine, and that when plaintiff suddenly turned to his left into the westerly lane the defendant also turned his machine back into that western lane and the collision occurred immediately. It was

the imminent danger of a collision in the center lane which caused the plaintiff to suddenly turn his machine toward the western lane. It was that sudden peril which led plaintiffs to offer the instruction, the refusal of which they charge as reversible error. There is no doubt plaintiffs relied upon that principle of law to account for suddenly turning their car westerly into the southbound lane. They adduced substantial evidence to that effect, and argued those facts to the jury as an explanation for turning their car westerly.

It is true there is a conflict of evidence as to whether defendant's car was approaching in the middle lane. The defendant testified in that regard:

"Q. . . . From the time that you crossed that bridge until this accident happened, . . . did you ever leave, at any time, the extreme right hand side lane of the highway? A. No. . . . I was in my right lane and first I saw Stickel, I saw him pull out and start around this other car, and he was in the center lane, and he come in the center lane for a little ways and his car just swerved right in front of me. I thought he had a blowout or something. . . . Q. . . . How far south of your car would you say the Stickel car was when it started swerving right across that highway in front of you? . . . A. It couldn't have been over fifty feet."

On the contrary, Mr. Stickel and Mrs. Lee testified that the defendant approached in the center lane. That evidence was corroborated to some extent by the traffic officer who testified that the defendant was in the center lane when he reached the crest of the hill, driving at an excessive rate of speed. Mr. Stickel said in that regard:

". . . This Durfee car passed a car that was in the westerly lane at the crest of this hill at that time, and . . . after he passed that car, he kept on bearing right straight down the center lane and it was only a matter of just seconds, . . . and I at that time I looked for every possible opening there was for me to avoid in any collision. . . . the Durfee car got so close to me that I knew definitely that I had no other alternative but to take and run into a head-on collision, rather than risk my family, I turned to the left and started towards the left. I don't know how far I got at that time."

We are constrained to hold that the conflict of evidence upon the questions as to whether plaintiffs were guilty of contributory negligence, and whether they were placed in a position of imminent peril by their own lack of reasonable care, became questions of fact for the exclusive determination of

the jury. We may not hold, as a matter of law, that plaintiffs were guilty of contributory negligence, or that they were placed in imminent danger of great peril by their own lack of reasonable care. At the request of the defendant the jury was properly instructed in the language of section 526, subdivision (b), of the Vehicle Code, that:

"(b) Upon a roadway which is divided into three lanes a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway ahead is clearly visible and such center lane is clear of traffic within a safe distance, . . . ."

Upon a conflict of evidence in that regard, as there appears to have been in the present trial, it was the exclusive province of the jury to decide whether plaintiffs complied with the provisions of the preceding quoted portion of that section of the code. ■ When the driver of plaintiffs' car turned into the center lane to pass the two cars ahead of him, no approaching machines were in sight. The center lane was then unobstructed and clear. The preceding cars in the right-hand lane were traveling slowly, at the rate of 30 miles per hour. It was more than half a mile to the crest of the hill. Ordinarily there should have been ample time to safely pass those cars. The plaintiffs were not required to anticipate that a machine would approach over the crest of the hill in the middle lane at an excessive rate of speed. ■ As plaintiffs were passing the cars in the center lane, another car arrived behind them, and when the emergency occurred, plaintiffs were unable to turn to their right hand into the easterly lane. The question is, Did they do what a reasonable person should have done in that emergency under such circumstances? That appears to present a question of fact which should have been submitted to the jury under a proper instruction. That instruction was offered and refused. We are persuaded the refusal of that instruction constituted reversible error. (19 Cal.Jur. § 36, p. 600.)

■ The rule of law is uniform that either party is entitled to proper instructions on every material issue of fact upon which he relies when there is substantial evidence to support his theory of the case. (*Kehlor* v. *Satterlee*, 37 Cal.App.2d 116, 119 [98 P.2d 759]; *Fischer* v. *Keen*, 43 Cal.App.2d 244, 251 [110 P.2d 693]; *Nitta* v. *Haslam*, 138 Cal.App. 736, 744 [33 P.2d 678]; *Duncan* v. *J. H. Corder & Son*, 18 Cal.App.2d 77, 82 [62 P.2d 1387]; *Varner* v. *Skov*, 20 Cal.App.2d 232, 238 [67 P.2d 123]; *Emery* v. *Los Angeles Ry. Corp.*, 61

Cal.App.2d 455, 462 [143 P.2d 112]; *Cassinelli* v. *Bennen,* 110 Cal.App. 722, 724 [294 P. 748].) The Varner case and the Emery case, previously cited, were reversed on appeal for refusal to give proper instructions on the issue of imminent peril. In the Emery case the court said: ''The plaintiffs requested an instruction stating this rule but it was refused and no other instruction on the subject was given.'' Regarding respondents' justification for refusing the instruction, the court further said:

''. . . Defendants do not deny that plaintiffs' proposed instruction was a correct statement of the law, so we do not set it forth here. The only justification advanced by them for the refusal of the instruction is that Emery by his own negligence got himself into the position of danger, and hence the rule above stated does not apply to the case. But, as we have already stated, the evidence is susceptible of a construction which frees him from negligence up to the time the sudden danger confronted him. The rule was, on that construction, fully applicable to the case, *and it was error not to give the requested instruction or some other stating the same rule.* (*Varner* v. *Skov* (1937), 20 Cal.App.2d 232, 238 [67 P.2d 123].)'' (Italics added.)

In the foregoing case from which we have quoted, a hearing was denied by the Supreme Court. The language used in that case fits the situation in the present case. It is in accordance with the uniform rule declared by all the cases. That case and the other cases previously cited appear to be conclusive of this appeal, adversely to the respondent. We conclude that the court erred in refusing plaintiffs' proposed instruction on the subject of imminent peril, and that it constitutes reversible error.

It is true that an instruction on the subject of imminent peril may be properly refused when it fails to state that the acts relied upon to excuse conduct which might otherwise justify a finding of contributory negligence, were performed in an emergency ''through no fault'' or ''without negligence'' on the part of the person relying upon the general rule. (*Wagy* v. *Brave,* 133 Cal.App. 413, 417 [24 P.2d 209]; *Gootar* v. *Levin,* 109 Cal.App. 703, 706 [293 P. 706]; *Brooks* v. *City of Monterey,* 106 Cal.App. 649, 656 [290 P. 540].) But the last cited cases have no application to the present action for the reason that the rejected instruction in this case clearly includes that condition. It states in part that: ''A person who, *without negligence on his part,* is

suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger," etc., is required to "exercise only the care that an ordinarily prudent person would exercise in the same situation." (Italics added.)

In this case there is ample evidence relied upon by the appellants, although there is a conflict in that regard, that plaintiffs exercised reasonable care and were legally authorized to attempt to pass the cars traveling slowly ahead of their machine on the easterly lane of the three-lane highway, by driving into the center lane which was then absolutely clear of traffic for a distance in excess of one-half mile to the crown of the hill, that they were not legally or reasonably required to anticipate that the defendant might approach over the crest in the center lane at an excessive rate of speed of 65 or 70 miles per hour when his proper westerly lane was then open and unobstructed. When the plaintiff, Mr. Stickel, did first see the defendant coming over the crest half a mile distant, he had a right to assume the defendant would observe the situation confronting plaintiffs with three cars on his left in the easterly lane, and that defendant would promptly turn into his proper westerly lane. It was not until defendant had approached to within the dangerous proximity of about 50 feet that, in the emergency, in attempting to prevent a collision, Stickel suddenly turned to his left, the right-hand lane being then blocked, and that defendant also then turned into the westerly lane, causing the collision. According to plaintiffs' theory, that situation, supported by competent evidence, certainly may not justify this court in holding that imminent peril existed through the fault of plaintiffs *as a matter of law.*

The cases relied upon by the respondent do not appear to conflict with the foregoing application of the rule with respect to the necessity of giving a proper instruction on the subject of imminent peril. In the case of *Dougherty* v. *Ellingson,* 97 Cal.App. 87 [275 P. 456], the judgment was affirmed on appeal, notwithstanding the refusal of an instruction on that subject. But it was affirmed because the rejected instruction was adequately covered by other instructions which were given to the jury. The court said, at page 96:

". . . Equally futile is the attempt by the same appellant to predicate error upon the refusal to give twelve instructions requested by her for a comparison of such instructions with those given clearly shows that the former were substantially

incorporated in the latter and hence their refusal was not error. (24 Cal.Jur. 806.)''

The case of *Fraser* v. *Stellinger*, 52 Cal.App.2d 564 [126 P.2d 653], upon which the respondent relies, is more nearly in point, but we think it is clearly distinguishable from the facts of the present case. In that case the judgment against the defendants was affirmed. Their instruction on imminent peril was refused on the theory that the negligent acts of the driver of defendants' truck alone caused the accident which was there involved. The appellate court merely said:

''The defendants copied an instruction on sudden emergency from *Church* v. *Payne*, 36 Cal.App.2d 382, 385 [97 P.2d 819], and requested that it be given. The trial court refused the request 'because the driver (Stellinger) had had the rider in view for 1000 feet as shown by his own testimony.' ''

But the facts disclosed by the opinion shows, without conflict, much more in support of the assumed lack of care of the driver of defendants' car as the sole cause of the accident. Unlike the present case, the driver of defendants' truck, traveling 35 or 40 miles per hour, was following plaintiff who was riding a bicycle along the extreme right-hand side of a four-lane highway which was divided by a white line along the center. There was no traffic in the adjoining ''fast traffic lane'' where defendants, in the exercise of due care, should have been driving in overtaking and passing the bicycle on the left-hand side. The driver of the truck saw plaintiff 1,000 feet ahead of his machine, but continued in the extreme outside lane until he reached a point close to the bicycle, when, as the driver of the truck testified, he sounded his horn which the bicyclist did not hear. The truck driver testified that he was then ''traveling in about the middle of the *slow lane*.'' That was the extreme outside lane where the plaintiff was riding his bicycle near the outer edge. The truck driver, traveling 35 or 40 miles per hour, clearly intended to pass the bicycle. He therefore belonged in the adjacent fast traffic lane. If the truck had been in the unobstructed lane where it belonged the accident could not have happened. In passing the bicycle, it was struck by the truck, or as the truck driver said, the bicycle suddenly turned left and struck the passing truck. The body of the plaintiff was picked up 15 or 20 feet east of the highway, and about 50 feet north of the place where the bicycle lay. The collision occurred in the easterly lane. From the facts recited in the opinion the driver of the truck

appears to have been guilty of negligence as a matter of law, according to his own admissions. His instruction on imminent peril was therefore properly refused.

The cases cited and relied upon by respondent do not appear to be in conflict with what we have previously stated with relation to the necessity of giving to a jury a proper instruction on imminent peril, when it is relied upon and supported by competent evidence, even though the testimony in that respect is conflicting.

The judgment is reversed and the cause remanded.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied December 10, 1948, and respondent's petition for a hearing by the Supreme Court was denied January 6, 1949.