[Civ. No. 3992.   Fourth Dist.   Sept. 18, 1950.]

HELEN COHEN, Appellant, v. SAMUEL C. HUNTER, Respondent.

Price, Nottbusch, Cory & Schwartz for Appellant.

John W. Holler for Respondent.

MUSSELL, J.—Plaintiff appeals from an adverse judgment in an action for personal injuries sustained by her when a baby carriage which she was pushing across Midway Drive in San Diego collided with an automobile operated by defendant.

The sole question presented is whether the evidence supports the implied finding of the jury that plaintiff was contributorily negligent.   This question must be answered in the affirmative.

Midway Drive is an arterial boulevard which, at the place

of the accident, runs generally north and south, is approximately 51 feet wide and is divided into four marked traffic lanes. The two traffic lanes on the east were divided by a single white line and the east and west traffic lanes were separated by a double white line in the center of the drive. Fordham Street intersects Midway Drive at right angles. It is 46½ feet wide west of Midway Drive and 25½ feet wide easterly thereof. There were well defined pedestrian crosswalks crossing Midway Drive on both the northerly and southerly sides of the intersection.

At the time of the accident (about 7:30 p.m.), December 21, 1947, the intersection was well lighted, the weather was clear, the pavement dry and the visibility good.

The plaintiff, with a companion, was crossing Midway Drive from west to east in the north crosswalk. She was pushing a baby carriage, with her grandson in it. When she had crossed the double line in Midway Drive and was approximately on the center line between the two easterly lanes of traffic, the baby carriage collided with the left rear fender and hubcap of an automobile being driven by the defendant northerly in the east traffic lane of Midway Drive. Plaintiff was not struck by the automobile, but received injuries in the accident of which she now complains.

The defendant approached the intersection at a speed of from 15 to 20 miles per hour, slowing down as he approached the south crosswalk. He testified that as he approached the intersection, he did not see any cars stopped near the crosswalk and did not see anyone in it as he came up to and entered the intersection; that when he first saw the pedestrians, he was approximately at the north curb line of Fordham Street; that he applied the brakes and stopped his car within a length or two thereof after the impact.

The plaintiff testified that before she entered Midway Drive she looked to her left to see if there was any traffic going south, and there being none, she stepped off the curb and proceeded to cross Midway Drive in the center of the painted crosswalk and was wheeling her grandson in a baby buggy before her; that as she neared the center of Midway Drive, she looked to see if there was any traffic coming north, when she saw a car that had stopped in the southerly crosswalk to let her go on; that as the car stopped, she looked again, continued walking, and that when she had crossed three lanes and was in the fourth lane, she was struck by the automobile;

that she did not see the defendant's car at all until the collision.

A traffic officer, at the time of the accident, was sitting at the northwest corner of the intersection and saw the defendant's automobile before the collision occured. He testified that he had no trouble in seeing it; that "it had lights on it and was plainly visible." He stated that there were two north bound cars stopped south of the intersection in the westerly north bound traffic lane of Midway Drive. However, the defendant and the passenger riding with him testified that they at no time saw these cars or either of them. The traffic officer further testified that he saw the left front of the vehicle strike the front of the baby buggy. This statement was contradicted by that of the defendant, his passenger, and the marks on the left rear fender and hubcap of the automobile.

An examination of the diagram, attached to appellant's opening brief, and of the reporter's transcript impels us to conclude that the plaintiff, had she looked to her right at any time after she arrived at the center of Midway Drive, could have seen the defendant's headlights and the approaching automobile. She was familiar with the intersection and knew it to be heavily traveled; she knew or should have known, that after arriving at the middle of Midway Drive, danger was to be anticipated from vehicles approaching from the south. There was no stop sign at the southeast corner of the intersection and defendant was proceeding northerly in his proper lane of traffic.

The jury evidently concluded that the plaintiff failed to exercise reasonable care in that she failed to see defendant's approaching automobile and pushed the baby carriage against it; that she could have avoided the accident by the exercise of reasonable care, and that her failure to exercise such care proximately contributed to the injuries which she sustained.

Under the circumstances shown by the record, the question of whether the plaintiff was guilty of contributory negligence was one of fact for the jury and its finding in that connection will not here be disturbed.

As was said in *O'Brien* v. *Schellberg*, 59 Cal.App.2d 764, 768 [140 P.2d 159]:

"It is the duty of every pedestrian before entering a highway to make reasonably careful observations to ascertain traffic conditions to be encountered. It is his duty to look in the direction from which an approaching motorist might

endanger his safety, to exercise reasonable care at all times within the marked crosswalk, and to continue to be alert to safeguard against injury. (Citing cases.) It is the duty of a pedestrian to exercise reasonable care while crossing a street of heavy traffic and such duty continues throughout his passage. . . . Whether he did so and whether the motorist who struck him exercised the proper amount of vigilance are questions for the jury's determination. . . .''

In *Salsberry* v. *Smith*, 85 Cal.App.2d 122, 126 [192 P.2d 73], this court said:

''Whether, under the circumstances, plaintiff looked in the direction from which danger would be reasonably apprehended, and as often and as carefully as would a person of ordinary prudence under like circumstances, were factual questions for the jury. An implied finding of the jury on that question will not be disturbed on appeal where there is, as here, substantial evidence or reasonable inferences to support it.'' (Citing cases.)

As was said in *Cooper* v. *Southern Pacific Co.*, 43 Cal. App.2d 693, 696 [111 P.2d 689]:

'' '. . . when a verdict is attacked as being unsupported, the the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. To establish the defense of contributory negligence as against the verdict of a jury, the evidence must be such that the appellate court can say that there is no substantial conflict on the facts and that from the facts a reasonable man can draw but one inference, which inference points unerringly to the negligence of the plaintiff proximately contributing to his own injury.' (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)''

A similar statement of this rule is found in *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].

The weight and sufficiency of the evidence, the construction to be put upon it and the inferences to be drawn therefrom were matters for the jury. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.